Opinion
CORRIGAN, J
Here we hold that when hearing an administrative appeal from discipline imposed on a correctional officer, an arbitrator may rule upon a discovery motion for officer personnel records, commonly referred to as a Pitchess motion. (Pitchess v. Superior Court (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305] (Pitchess); Evid. Code, §§ 1043, 1045.) Evidence Code section 1043 expressly provides that Pitchess motions may be filed with an appropriate “administrative body.” The language reflects a legislative intent that administrative hearing officers be allowed to rule on these motions. This holding harmonizes the statutory scheme with other Evidence Code provisions and furthers the goals of the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3300 et seq.).
*629 I. BACKGROUND
The Riverside County Sheriff’s Department (the department) fired Deputy Kristy Drihkwater for falsifying her payroll forms. A memorandum of understanding (MOU) between the Riverside Sheriffs’ Association (Sheriffs’ Association) and the county provided for an administrative appeal. The parties chose arbitrator Jan Stiglitz as the hearing officer.
Drinkwater intended to urge a disparate treatment defense, claiming that others had committed similar misconduct but were not fired. Accordingly, she sought discovery of redacted records “from personnel investigations of any Department employees who have been disciplined for similar acts of misconduct.” (See Pegues v. Civil Service Com. (1998) 67 Cal.App.4th 95, 105-106 [78 Cal.Rptr.2d 705]; Talmo v. Civil Service Com. (1991) 231 Cal.App.3d 210, 229-231 [282 Cal.Rptr. 240].) Limiting her request to events during the previous five years, she sought incident summaries, the rank of the officer, and the discipline imposed. The department objected, arguing in part that Drinkwater could not satisfy the requirements for a Pitchess motion under Evidence Code sections 1043 and 1045, and could not establish the good cause required for discovery. Stiglitz denied the motion without prejudice, ruling the department need not search its records for similar disciplinary cases. Instead, Drinkwater was obligated to identify particular officers whose records she believed were relevant to her claim.
Drinkwater renewed her motion, supported by counsel’s declaration that 11 named officers had allegedly committed similar misconduct but received little or no discipline. Stiglitz ordered production of the 11 officers’ records for in camera review.
The department sought a writ of administrative mandate in superior court. (See Code Civ. Proc., § 1094.5.) It argued initially that Drinkwater failed to establish good cause for discovery because counsel’s declaration was speculative and Pitchess discovery was only available for officers involved in the underlying incident at issue. The department then filed a supplemental brief citing the recent case of Brown v. Valverde (2010) 183 Cal.App.4th 1531 [108 Cal.Rptr.3d 429] (Brown). Brown held that a driver facing a license suspension for driving under the influence could not seek Pitchess discovery in a Department of Motor Vehicles (DMV) administrative proceeding. (See discussion, post) Relying upon Brown, the department argued only judicial officers could grant Pitchess motions, depriving Stiglitz of authority to rule. The superior court agreed and granted mandate, ordering Stiglitz to reverse his prior order.
The Sheriffs’ Association sought to intervene, moving to set aside the mandate order and to secure a new hearing. Intervention was granted. After *630 additional briefing and a new hearing, the superior court again granted the department’s mandate petition, relying upon Brown.
Drinkwater and intervener Sheriffs’ Association sought review. In consolidated appeals, the Court of Appeal reversed, distinguishing Brown and criticizing its reasoning. We affirm.
II. DISCUSSION
The department again urges that only judicial officers are authorized to rule on Pitchess motions. That argument fails in light of the governing statutes.
A. The Pitchess Statutes
In Pitchess, this court held a criminal defendant could obtain discovery of certain law enforcement personnel records upon a sufficient showing of good cause. (Pitchess, supra, 11 Cal.3d at pp. 537-540.) “In 1978, the California Legislature codified the privileges and procedures surrounding what had come to be known as ‘Pitchess motions’ . . . through the enactment of Penal Code sections 832.7 and 832.8 and Evidence Code sections 1043 through 1045.” (City of Santa Cruz v. Municipal Court (1989) 49 Cal.3d 74, 81 [260 Cal.Rptr. 520, 776 P.2d 222], fn. & citation omitted (City of Santa Cruz).) Those sections create a statutory scheme making these records confidential and subject to discovery only through the procedure set out in the Evidence Code. (City of Santa Cruz, at pp. 81-82.) The sole issue here is whether, by statute, these motions may only be ruled on in the superior court, or whether they can be resolved by an administrative hearing officer. In answering this question of statutory interpretation, our goal is to effectuate the Legislature’s intent. (People v. Johnson (2013) 57 Cal.4th 250, 260 [159 Cal.Rptr.3d 70, 303 P.3d 379]; People v. Cornett (2012) 53 Cal.4th 1261, 1265 [139 Cal.Rptr.3d 837, 274 P.3d 456].) “ ‘When interpreting statutes, we begin with the plain, commonsense meaning of the language used by the Legislature. [Citation.] If the language is unambiguous, the plain meaning controls.’ [Citation.] ‘[W]henever possible, significance must be given to every word [in a statute] in pursuing the legislative purpose, and the court should avoid a construction that makes some words surplusage.’ [Citation.] ‘[W]e may reject a literal construction that is contrary to the legislative intent apparent in the statute or that would lead to absurd results . . . .’ [Citation.]” (People v. Rodriguez (2012) 55 Cal.4th 1125, 1131 [150 Cal.Rptr.3d 533, 290 P.3d 1143]; accord, Voices of the Wetlands v. State Water Resources Control Bd. (2011) 52 Cal.4th 499, 518-519 [128 Cal.Rptr.3d 658, 257 P.3d 81].) We consider the applicable statutes in turn.
Penal Code section 832.7, subdivision (a) provides in part: “Peace officer or custodial officer personnel records and records maintained by any state or *631 local agency pursuant to [Penal Code] Section 832.5 [regarding the investigation and retention of citizen complaints], or information obtained from these records, are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code.” (Italics added.) Penal Code section 832.8 defines “personnel records,” a definition not disputed here.[1]
Evidence Code section 1043, subdivision (a) reads in part: “In any case in which discovery or disclosure is sought of peace or custodial officer personnel records ... , the party seeking the discovery or disclosure shall file a written motion with the appropriate court or administrative body . . . .” (Italics added.) The expansive language of Evidence Code section 1043, subdivision (a) does two things. First, it makes clear that Pitchess motions may be brought in both civil and criminal cases. (See Commission on Peace Officer Standards & Training v. Superior Court (2007) 42 Cal.4th 278, 293 [64 Cal.Rptr.3d 661, 165 P.3d 462] (Peace Officer Standards); Pen. Code, § 832.7, subd. (f).) Second, Evidence Code section 1043 specifically states the motion should be filed with the appropriate court “or administrative body.” Sections 1043 and 1045 appear in division 8 of the Evidence Code dealing with privileges. Chapter 4, article 9 of that division contains definitions to govern the construction of sections contained in division 8. Evidence Code section 901 expansively defines a “proceeding” as “any action, hearing, investigation, inquest, or inquiry (whether conducted by a court, administrative agency, hearing officer, arbitrator, legislative body, or any other person authorized by law) in which, pursuant to law, testimony can be compelled to be given.” (Italics added.) The Law Revision Commission explained that this definition included “administrative proceedings” and “arbitration proceedings” (Cal. Law Revision Com. com., reprinted at 29B pt. 3A West’s Ann. Evid. Code (2009 ed.) foll. § 901, p. 213), and that this broad definition was necessary to protect privileges by making them applicable to nonjudicial proceedings (id., foll. § 910, pp. 216-217).
As explained in City of Santa Cruz, Evidence Code section 1043 sets out the initial good cause showing an applicant must make to even begin the discovery process. If that showing is successful, Evidence Code section 1045 governs the conduct of the resultant hearing in camera. The materials sought must be shown “relevant to the subject matter involved in the pending litigation.” (Evid. Code, § 1045, subd. (a).) Certain categories of information *632 are not discoverable.[2] (Evid. Code, § 1045, subds. (a), (b); see City of Santa Cruz, supra, 49 Cal.3d at p. 83.)
B. Evidence Code Section 1043 and the Lack of a Transfer Mechanism
The department observes that Evidence Code section 1045 repeatedly refers to “the court” as the entity that must conduct an in camera review, determine relevance, and issue appropriate protective orders. It argues that because “the court” appears five[3] times in Evidence Code section 1045, these references trump the single reference to “administrative body” in Evidence Code section 1043. The department argues that although Evidence Code section 1043 mandates that Pitchess motions be filed with “the appropriate court or administrative body,” Evidence Code section 1045’s repeated reference to “the court” means that only judicial officers may rule on them.
This argument fails for several reasons. First, it simply reads “administrative body” out of Evidence Code section 1043. If the Legislature intended that only the superior court could rule on Pitchess motions, it could easily have said so. There is no discernable reason why the Legislature would expressly provide in Evidence Code section 1043 that a Pitchess motion may be filed before an administrative body, then implicitly suggest in Evidence Code section 1045 that such a body was powerless to act upon the motion because only “the court” may conduct the required in camera review. Indeed, such an interpretation would mean the Legislature had expressly provided for the doing of an idle act: filing a motion with a body not authorized to rule on it.
Second, the argument completely ignores the broad definition of “proceeding” in Evidence Code section 901, which includes administrative hearings and arbitrations. Disregarding that section violates the principle that we consider the language of the entire scheme and related statutes, harmonizing the terms when possible. If any ambiguity remains, we may examine the legislative history and the stated purpose of the scheme to guide our *633 interpretation. (See Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles (2012) 55 Cal.4th 783, 803 [149 Cal.Rptr.3d 383, 288 P.3d 717].) Evidence Code section 900 reflects a legislative mandate that the definitions provided “govern the construction” of the division in which Evidence Code sections 1043 and 1045 appear.
Further, had the Legislature intended that Pitchess motions could only be conducted in the superior court, it could have provided a mechanism to transfer a motion from an administrative proceeding to the superior courts. It did not do so. Evidence Code section 1043 makes no provision for the transfer of Pitchess motions from an administrative setting to the superior court. The parties agree that no other statute authorizes such a transfer. A transfer procedure would require the creation of an extraordinary procedure because, in a case like this one, there is no case or controversy pending in the superior court.
While the parties cite no statutory transfer mechanism, amici curiae suggest one may be found through various other provisions. The Los Angeles Police Protective League (the Protective League) points to two statutes that might permit an extraordinary transfer. First, it cites Code of Civil Procedure[4] section 1281.8, subdivision (b), which allows a party in arbitration to file in superior court “an application for a provisional remedy in connection with an arbitrable controversy, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief.” (Italics added.) “The logical reason for the requirement that an applicant be required to show that an arbitration award may be rendered ineffectual is to ensure that the court does not invade the province of the arbitrator — i.e., the court should be empowered to grant provisional relief in an arbitrable controversy only where the arbitrator’s award may not be adequate to make the aggrieved party whole.” (Woolley v. Embassy Suites, Inc. (1991) 227 Cal.App.3d 1520, 1527 [278 Cal.Rptr. 719], italics added; see California Retail Portfolio Fund GMBH & Co. KG v. Hopkins Real Estate Group (2011) 193 Cal.App.4th 849, 856 [122 Cal.Rptr.3d 614].) Section 1281.8, thus, does not speak to any and all types of harm. It addresses only a circumstance in which a party might prevail in an arbitration but still have no recourse due to some changing condition. (See California Retail Portfolio Fund GMBH & Co. KG, at pp. 859-862 [affirming writ of attachment under § 1281.8 due to the defendant’s potential insolvency, which might have rendered an arbitration award ineffectual].)
This scheme does not apply here. Initially, section 1281.8 only applies to applications by parties. There may be instances in which the custodian of records is not a party to the arbitration. Here, although the department is a *634 party, the only substantive “award” to which it may be entitled in the arbitration is a confirmation that its decision to terminate Drinkwater was proper. The department does not explain how that potential confirmation would be rendered ineffectual by production of the records sought, or by any proper order of disclosure.
The Protective League also cites a provision of the Public Safety Officers Procedural Bill of Rights Act (POBRA) (Gov. Code, § 3300 et seq.). Government Code section 3309.5, subdivision (d)(1) provides: “In any case where the superior court finds that a public safety department has violated any of the provisions of this chapter, the court shall render appropriate injunctive or other extraordinary relief to remedy the violation and to prevent future violations of a like or similar nature, including, but not limited to, the granting of a temporary restraining order, preliminary injunction, or permanent injunction prohibiting the public safety department from taking any punitive action against the public safety officer.” This provision was enacted to prevent police departments from violating the rights of officers. (See Jaramillo v. County of Orange (2011) 200 Cal.App.4th 811, 827-828 [133 Cal.Rptr.3d 751].) It simply does not speak to the situation at issue here. Further, nothing in the POBRA’s general grant of a right to administrative appeal (Gov. Code, §§ 3304, subd. (b), 3304.5) suggests an authorization to transfer a matter from an administrative proceeding to the superior court.
The California State Association of Counties and the California League of Cities suggest a writ of administrative mandate might provide a transfer mechanism. They propose that the hearing officer could begin the Pitchess inquiry under Evidence Code section 1043. If the hearing officer finds a good cause showing has been made, a party may seek administrative mandate. The superior court could then review the records under Evidence Code section 1045.
Such an interpretation would morph the mandate statute beyond its delineated contours. The Code of Civil Procedure permits administrative mandate for inquiry “into the validity of any final administrative order,” but only as to “whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion.” (§ 1094.5, subds. (a), (b).) In that mandate proceeding, the superior court would only be empowered to review the propriety of the good cause determination and production order. If it determined that the order was proper, the court’s review role would end. The authority conferred under section 1094.5 does not grant the court broader jurisdiction to actually conduct a review of the records produced. Nor does it create a cause or controversy beyond the question referred to in the statutory language.
*635 Similarly, we are not authorized to create a nonstatutory transfer mechanism here. Drinkwater cites section 187, which states: “When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code.” “The section does not speak to jurisdiction; it does not create jurisdiction; rather, the existence of jurisdiction is the premise for its application. Where jurisdiction exists from other sources, Code of Civil Procedure section 187 grants courts authority to exercise any of their various powers as may be necessary to carry out that jurisdiction.” (People v. Picklesimer (2010) 48 Cal.4th 330, 338 [106 Cal.Rptr.3d 239, 226 P.3d 348] (Picklesimer).)
Section 187 comes into play only when a court has lawful jurisdiction. No statute confers jurisdiction on the superior court to hear a Pitchess motion when, as here, the motion is filed with an administrative hearing officer. Neither Evidence Code section 1045 nor Evidence Code section 915 speaks to jurisdiction. (See discussion, post) At most, those provisions describe the duties of a court if the motion is properly before it. Only Evidence Code section 1043, which allows a Pitchess motion to be filed “with the appropriate court or administrative body,” speaks to jurisdiction. This understanding is confirmed by Evidence Code section 1043, subdivision (b)(3), which provides that a motion must include affidavits that “set[] forth the materiality thereof to the subject matter involved in the pending litigation.” (Italics added.) Here, the pending litigation is the administrative appeal conducted pursuant to the MOU. The only express grant of jurisdiction reflected in the Pitchess statutes allows the matter to be placed before the hearing officer. Section 187 requires an independent grant of jurisdiction by the Constitution or statute. Evidence Code section 1043 articulates the appropriate venue for the filing of a Pitchess motion. These provisions, read together, do not authorize the judicial creation of a transfer mechanism from the hearing officer to superior court. (See Picklesimer, supra, 48 Cal.4th at p. 338 [refusing to apply § 187 to find the superior court had jurisdiction to hear a postjudgment motion for relief from an improper sex offender registration requirement]; Swarthout v. Superior Court (2012) 208 Cal.App.4th 701, 707-708 [145 Cal.Rptr.3d 760] [same as to a postconviction motion to transfer an inmate]; People v. Ainsworth (1990) 217 Cal.App.3d 247, 254-255 [266 Cal.Rptr. 175] [same as to postconviction discovery motion].)
Drinkwater also suggests that “all courts have inherent supervisory or administrative powers which enable them to carry out their duties, and which exist apart from any statutory authority.” This argument suffers the same defect as the one above. Courts have supervisory authority to “ ‘control *636 litigation before them. . . .’ [Citation.]” (In re Reno (2012) 55 Cal.4th 428, 522 [146 Cal.Rptr.3d 297, 283 P.3d 1181], italics added.) A court has no authority to confer jurisdiction upon itself where none exists. Indeed, in Pitchess itself, although we suggested that a court had “inherent power to order discovery when the interests of justice so demand” (Pitchess, supra, 11 Cal.3d at p. 535), there was no question that the court had jurisdiction over the pending criminal case. Similar exercises of a court’s inherent supervisory authority have occurred in the context of a court that already had jurisdiction over the matter.[5]
The Legislature did not specify a transfer mechanism in the Pitchess statutes. No other statute or authority exists for such a transfer. Accordingly, we conclude that by expressly permitting filing with an appropriate administrative body in Evidence Code section 1043, the Legislature intended to allow administrative hearing officers to decide such motions without court intervention. The department’s contrary construction of the scheme violates “the rule of construction that courts should, if possible, accord meaning to every word and phrase in a statute to effectuate the Legislature’s intent.” (People v. Cobb (2010) 48 Cal.4th 243, 253 [106 Cal.Rptr.3d 230, 226 P.3d 340]; see Ste. Marie v. Riverside County Regional Park & Open-Space Dist. (2009) 46 Cal.4th 282, 289 [93 Cal.Rptr.3d 369, 206 P.3d 739].) There is no indication the Legislature contemplated the filing of an ineffectual motion with a body that could not consider it.
C. Evidence Code Sections 1045 and 915
Evidence Code section 1045’s repeated reference to the duties of “the court” can be understood in the context of the legislative history of the Pitchess statutes. When Evidence Code sections 1043 and 1045 were enacted, the Legislature was focused primarily upon our Pitchess decision and its *637 consequences in the context of criminal prosecutions, which obviously occur before courts. “After this court rendered its decision, concerns were expressed to the Legislature that, in response to Pitchess, law enforcement departments were destroying personnel records in order to prevent discovery; in some instances, criminal charges had been dismissed because the records to which the defendant would have been entitled no longer were available. (See Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1436 (1977-1978 Reg. Sess.) as introduced, p. 7; Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1436 (1977-1978 Reg. Sess.) as amended Apr? 3, 1978; Assem. Com. on Crim. Justice, Analysis of Sen. Bill No. 1436 (1977-1978 Reg. Sess.) as amended Aug. 7, 1978.) As a result of these concerns, Senate Bill No. 1436 was enacted, requiring that records relating to citizen complaints be maintained for a period of five years. (Stats. 1978, ch. 630, § 4, p. 2083, amending [Pen. Code,] § 832.5, subd. (b).) The statute also established procedures, consistent with Pitchess, permitting discovery of peace officer personnel records in civil or criminal cases only after an in camera review of the records by a judge and a determination that the information sought is relevant to the pending litigation. (Stats. 1978, ch. 630, §§ 1 & 3, pp. 2082-2083, adding Evid. Code, §§ 1043 & 1045.)” (Peace Officer Standards, supra, 42 Cal.4th at p. 293.)
The reality that Pitchess motions are so frequently made in the context of criminal prosecutions would explain why Evidence Code section 1045 references “the court.” However, the Legislature recognized in Evidence Code section 1043 that Pitchess motions may be relevant in other contexts, thus explaining its broad language allowing the filing of the motion in “any case” before “the appropriate court or administrative body.” Given the legislative history of the Pitchess statutes, the expansive language of Evidence Code section 1043, and the absence of a transfer mechanism, the Legislature’s reference to “the court” in Evidence Code section 1045 cannot be interpreted as a coded expression of legislative intent to substantively limit who may rule on Pitchess motions.
The department argues that Evidence Code section 915 constitutes such a substantive limitation. Evidence Code section 915, subdivision (a) states that in ruling on a claim of privilege, the presiding officer cannot require disclosure of the assertedly privileged information before ruling on the privilege claim. Evidence Code section 915, subdivision (b) provides an exception when the court is unable to rule unless it knows the content of the assertedly privileged information. In such a case, the court may order the disputed information disclosed for review in chambers. The Law Revision Commission’s comments following Evidence Code section 915 noted that “[t]he exception in subdivision (b) applies only when a court is ruling on the claim of privilege. Thus, in view of subdivision (a), disclosure of the *638 information cannot be required, for example, in an administrative proceeding.” (Cal. Law Revision Com. com., 29B pt. 3A West’s Ann. Evid. Code, supra, foll. § 915, p. 256.)
The department observes Evidence Code section 1045, subdivision (b) directs that “[i]n determining relevance, the court shall examine the [sought] information in chambers in conformity with Section 915 . . . .” Because Evidence Code section 915 does not mention administrative proceedings, the department argues hearing officers have no authority to decide Pitchess motions. The department’s argument is unpersuasive for several reasons. First, Evidence Code section 1045 simply requires that an in camera Pitchess hearing must be had “in conformity with” Evidence Code section 915, “ ‘i.e., out of the presence of all persons except the person authorized to claim the privilege and such other persons as he or she is willing to have present ....’” (Alford v. Superior Court (2003) 29 Cal.4th 1033, 1038 [130 Cal.Rptr.2d 672, 63 P.3d 228] (Alford); City of Santa Cruz, supra, 49 Cal.3d at p. 83.) We observed in People v. Mooc (2001) 26 Cal.4th 1216 [114 Cal.Rptr.2d 482, 36 P.3d 21] (Mooc): “[T]o protect the officer’s privacy, the examination of documents and questioning of the custodian should be done in camera in accordance with the requirements of Evidence Code section 915, and the transcript of the in camera hearing and all copies of the documents should be sealed.” (Id. at p. 1229.) Thus, we have recognized that Evidence Code section 1045 referenced Evidence Code section 915 only to the extent the latter provision defined what procedure was required at an in camera hearing, not who would conduct the hearing. The department’s reading of the statute would render the reference to Evidence Code section 915 mere surplusage.
Second, section 915 was enacted as part of the original Evidence Code in 1965. The Law Revision Commission’s comment predated both our Pitchess decision and the Legislature’s subsequent codification of it. It is, then, a poor indicator of legislative intent as to the proper scope of the Pitchess scheme. The commission’s comments informed the Legislature’s understanding at the time it enacted the Evidence Code. They did not bar the Legislature from talcing future action, as it did when it amended the code 13 years later following this court’s Pitchess decision. (Cf. Duarte v. Chino Community Hospital (1999) 72 Cal.App.4th 849, 856, fn. 3 [85 Cal.Rptr.2d 521].)
Third, and most problematic, the department’s interpretation of Evidence Code section 915 suffers from the same defect as its interpretation of Evidence Code section 1045. It requires us to conclude that the Legislature intended to also permit Pitchess filings with an appropriate “administrative body” under Evidence Code section 1043, yet render that body unable to act on them. The Legislature could not have intended to provide for the idle act of filing ineffectual motions.
*639 D. The Purposes Behind the Pitchess Statutes and POBRA
Our conclusion is also consistent with the purposes behind the POBRA. The POBRA, to which these parties have contractually bound themselves, “sets forth a number of basic rights and protections which must be accorded individual public safety officers by the public agencies which employ them.” (White v. County of Sacramento (1982) 31 Cal.3d 676, 679 [183 Cal.Rptr. 520, 646 P.2d 191].) Included is the right to administratively appeal an adverse employment decision, “to give a peace officer ‘an opportunity . . . “to convince the employing agency to reverse its decision” ’ to take punitive action.” (Copley Press, Inc. v. Superior Court (2006) 39 Cal.4th 1272, 1287 [48 Cal.Rptr.3d 183, 141 P.3d 288], italics omitted (Copley Press); see County of Riverside v. Superior Court (2002) 27 Cal.4th 793, 799 [118 Cal.Rptr.2d 167, 42 P.3d 1034].) The Legislature declared that “effective law enforcement depends upon the maintenance of stable . . . relations, between public safety employees and their employers,” and that basic protections for officers were necessary to preserve that stability. (Gov. Code, § 3301.) Allowing relevant discovery to be ordered in an administrative hearing furthers these goals.
Our conclusion is also consistent with the overall aims of the Pitchess scheme. Although the department adamantly argues the sole purpose of the statutes was to rein in Pitchess motions, that characterization is not entirely accurate. As discussed, the Pitchess statutes reflected the Legislature’s attempt to balance a litigant’s discovery interest with an officer’s confidentiality interest. (See Peace Officer Standards, supra, 42 Cal.4th at p. 293; Garcia v. Superior Court (2007) 42 Cal.4th 63, 69-70 [63 Cal.Rptr.3d 948, 163 P.3d 939] (Garcia); City of Santa Cruz, supra, 49 Cal.3d at p. 84.) Whether filed before a court or an administrative hearing officer, interests must still be balanced when ruling on a Pitchess motion.
We emphasize that here there is no question hearing officer Stiglitz, an attorney, is qualified to rule on the Pitchess motion. The MOU provides that a hearing officer be selected from a mutually agreed-upon list. (MOU, art. XII, § 14, subd. A.) If the department believed Stiglitz was not qualified for any reason, it could have removed him from the list or stricken him as an available hearing officer in this case. In any event, the Legislature in Evidence Code section 914 has determined that hearing officers generally have the authority to rule on claims of privilege in the same manner as courts.[6]
Further, we observe that this case reflects several safeguards against improper disclosure of confidential records. The MOU here expressly provides that the administrative hearing is a “private proceeding” between the *640 disciplined officer and the county. (MOU, art. XII, § 14, subd. H.(9).) Officer personnel records are confidential under Penal Code section 832.7, and we have held such records produced at administrative disciplinary proceedings are not subject to public disclosure. (See Copley Press, supra, 39 Cal.4th at pp. 1286-1299.) In addition, any discovered records may only be used in the proceeding at issue.[7] (See Evid. Code, § 1045, subd. (e); Alford, supra, 29 Cal.4th at pp. 1039-1043.)
An additional confidentiality safeguard appears in Evidence Code section 1045, subdivision (c), which provides that “[i]n determining relevance where the issue in litigation concerns the policies or pattern of conduct of the employing agency, the court shall consider whether the information sought may be obtained from other records maintained by the employing agency in the regular course of agency business which would not necessitate the disclosure of individual personnel records.” Thus, upon an appropriate finding, other data could be released in lieu of personnel records.
We have also clarified that an officer’s entire personnel file need not be presented for review, only materials of the type requested. (Mooc, supra, 26 Cal.4th at pp. 1228-1230.) In the present case, such materials would be limited to incidents involving conduct similar to Drinkwater’s. This limitation balances privacy interests while permitting focused discovery.
The department does not argue that Drinkwater’s disparate treatment defense is invalid or that the discovery she seeks is irrelevant to that defense. Accordingly, we have no occasion to discuss the availability or scope of such a defense. Drinkwater’s Pitchess motion also named the specific officers whose records she sought, reducing the possibility of an improper “fishing expedition.”
The department relies heavily upon Brown, supra, 183 Cal.App.4th 1531, a case readily distinguishable. Brown concluded that a Pitchess motion was inconsistent with the statutory scheme by which a driver’s license may be suspended after a drunk driving arrest. The Brown court reasoned a Pitchess motion would frustrate the Legislature’s aim to quickly remove unsafe drivers from the road using an administrative procedure. Further, the hearing addressed only whether the licensee drove with a blood-alcohol level above the legal limit. The relevance of Pitchess discovery in that context was questionable. (Brown, at pp. 1555-1557.) To the extent Brown rejected the claim “that the Legislature intended Pitchess discovery to be available in all administrative proceedings” where an officer’s credibility was at issue (id. at *641 p. 1555, italics added), such conclusion is inapposite here. The department concedes that the discovery Drinkwater seeks is relevant to the review of her discipline and does not bear on the credibility of officers whose records are sought. The question here is not whether those officers might be credible, but whether department decision makers granted those officers disparate treatment. Additionally, unlike the license suspension context, allowing Pitchess motions in this case furthers the goals of the POBRA, and honors the Legislature’s Pitchess scheme. In any case, “ ‘ “[i]t is axiomatic that cases are not authority for propositions not considered.” ’ ” (McWilliams v. City of Long Beach (2013) 56 Cal.4th 613, 626 [155 Cal.Rptr.3d 817, 300 P.3d 886]; see People v. Johnson (2012) 53 Cal.4th 519, 528 [136 Cal.Rptr.3d 54, 267 P.3d 1125].) The precedential value of Brown is limited to its facts involving a driver’s license suspension.
E. Evidence Code Section 1047
The department argues that, because the officers whose records Drinkwater has requested had nothing to do with her termination, she is not entitled to discovery. In support, the department cites Evidence Code section 1047, which provides in part: “Records of peace officers or custodial officers . . . who either were not present during the arrest or had no contact with the party seeking disclosure from the time of the arrest until the time of booking, or who were not present at the time the conduct is alleged to have occurred within a jail facility, shall not be subject to disclosure.” The department’s reading of this statute was rejected in Alt v. Superior Court (1999) 74 Cal.App.4th 950 [88 Cal.Rptr.2d 530]. Alt reasoned that Evidence Code section 1047 only applies if the discovery request relates to an incident involving an arrest or its equivalent. When, as here, the discovery request is unrelated to an arrest, Evidence Code section 1047’s limitation does not apply. As Alt observed, a contrary conclusion “would largely supplant the general discovery standards set forth in sections 1043 and 1045. [A contrary] interpretation of section 1047 would mean that police personnel information could be discovered only if there had been an arrest or contact between arrest and booking, and in no other situation. This reading runs counter to Memro’s[8] observation that sections 1043 and 1045 do not limit discovery of police personnel records to cases involving altercations between police officers and arrestees.” (Alt, at pp. 957-958.)
Evidence Code section 1047’s legislative history supports Alt’s conclusion. The proponents of the provision urged its purpose was to deter frivolous Pitchess requests made by criminal defendants “as a bargaining tool to *642 attempt to reduce pending criminal charges” “made primarily to harass the officers and supervisors within police and sheriff’s departments.” (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1112 (1985-1986 Reg. Sess.) July 3; 1985, p. 3.) The Senate Judiciary Committee analysis observed: “The bill would only pertain to cases alleging the use of excessive force by a peace officer in connection with an arrest. It would not apply where the person had only been detained and not arrested. [¶] This distinction appears well founded: since the person had not been arrested there would be no incentive to file a frivolous request.” (Id. at p. 4.) This analysis expressly alerted the Legislature to the limitation recognized by Alt.
F. The Dissenting Opinion
The dissenting opinion concludes that an administrative hearing officer is empowered to rule on a Pitchess motion, but may not compel production of personnel records for in camera review before it rules. (Conc. & dis. opn., post, at pp. 655-656.) It suggests that if the custodian of records voluntarily produces the records “with the consent of the officer whose personnel records are sought, the matter is at an end.” (Id. at p. 656.) If the custodian refuses to comply, the party seeking discovery may seek to have the matter referred to the superior court. Under the dissent’s proposal, after such a transfer, the court could then review materials in camera to decide whether it should order discovery and make any protective order. (Ibid.)
The dissent cites Evidence Code section 914, subdivision (b), which provides that a person may not be held in contempt for failing to disclose privileged information unless by order of court, and Code of Civil Procedure section 1991, which empowers a hearing officer to report to the superior court a witness’s disobedience to a subpoena or refusal to answer a question and to seek a court order compelling compliance. The dissent suggests this scheme applies to Pitchess motions before administrative hearing officers. (See conc. & dis. opn., post, at p. 657.)
This proposal is inconsistent with the Pitchess statutes. Most fundamentally, under the dissent’s view, an in camera review of personnel records would no longer be required prior to disclosure. Under the cited scheme of section 1991, the superior court would become involved only if the custodian of records refused to comply with the disclosure order. The dissent asserts that if the custodian voluntarily complies with the disclosure order, “the matter is at an end” without any in camera review by anyone. (Concx. & dis. opn., post, at p. 656.)
The Legislature could not have contemplated such a scheme because Evidence Code section 1045 expressly provides that in camera review is *643 mandatory before disclosure in every case. As noted, subdivision (b) of that provision requires an examination of the records to exclude complaints about conduct “occurring more than five years” earlier; the conclusions of any investigating officer (in a criminal proceeding); and “[fjacts sought to be disclosed that are so remote as to make disclosure of little or no practical benefit.” (Evid. Code, § 1045, subd. (b).) “By providing that the trial court should conduct an in camera review, the Legislature balanced the accused’s need for disclosure of relevant information with the law enforcement officer’s legitimate expectation of privacy in his or her personnel records.” (Mooc, supra, 26 Cal.4th at p. 1220 (maj. opn. of Werdegar, J.); see Garcia, supra, 42 Cal.4th at pp. 69-70.) Nothing in the wording of Evidence Code section 1045 remotely suggests the custodian of records may waive in camera review, much less conduct the required review on its own.
Indeed, in enacting the Pitchess statutes, the Legislature amended the bill to specifically eliminate language in earlier versions that made an in camera review optional at the request of the officer or other person who could assert the privilege. (See Sen. Bill No. 1436 (1977-1978 Reg. Sess.) as introduced Jan. 27, 1978, p. 3; Sen. Amend. to Sen. Bill No. 1436 (1977-1978 Reg. Sess.) Apr. 3, 1978, p. 3; Sen. Amend. to Sen. Bill No. 1436 (1977-1978 Reg. Sess.) Apr. 17, 1978, p. 3; Assem. Amend. to Sen. Bill No. 1436 (1977-1978 Reg. Sess.) Aug. 7, 1978, p. 3.) Previous versions of the bill also limited discovery to the identities of complainants and witnesses and, in some circumstances, their statements. They also allowed officers an absolute right not to disclose any privileged information notwithstanding a court’s finding that it was relevant to the litigation at issue. (See Assem. Com. on Criminal Justice, Analysis of Sen. Bill No. 1436 (1977-1978 Reg. Sess.) June 5, 1978, p. 2; Assem. Amend. to Sen. Bill No. 1436 (1977-1978 Reg. Sess.) Aug. 7, 1978, pp. 4-5.) It was in this context that legislative committee reports provided the assurance that “[a]ll requests for discovery of police personnel records would require that before disclosure could be made the judge would have to review, in camera, the records sought, to determine which if any of them are relevant to the litigation” (Assem. Com. on Criminal Justice, Final Analysis of Sen. Bill No. 1436 (1977-1978 Reg. Sess.) Aug. 30, 1978, p. 2, italics added), and “[a]ll requests for discovery would require an in camera hearing at which the court would determine the relevancy of the material sought” (Assem. Com. on Criminal Justice, Analysis of proposed amendments to Sen. Bill No. 1436 (1977-1978 Reg. Sess.) Aug. 18, 1978, p. 2, italics added, underscoring omitted). This history reflects that, in exchange for allowing broader discovery of officer personnel records and eliminating an officer’s absolute privilege to foreclose discovery of his files, the Legislature considered an in camera review a pivotal and necessary protection for officers. Thus, contrary to the dissent’s suggestion (see conc. & dis. opn., post, at p. 653), the focus of the reports was that an in camera review would *644 be conducted before disclosure, not on who would conduct the review. The legislative history materials, like Evidence Code section 1045 itself, largely assumed a judicial proceeding, and made no mention of any difference in procedure between judicial and nonjudicial proceedings. If the Legislature contemplated a difference, as the dissent posits, one would expect the extensive legislative history would have mentioned it at least once.
The dissent asserts the Pitchess statutes “ensur[ed] that whenever discovery was opposed, in camera review would follow as a matter of course. ([Evid. Code,] § 1045, subd. (b).)”' (Conc. & dis. opn., post, at pp. 656-657, italics added.) But Evidence Code section 1045, subdivision (b) says nothing about contested motions. It requires a determination of relevance and the conduct of an in camera review to exclude certain categories of information regardless of relevance. Nothing in the language of the statutory scheme suggests the duty to determine relevance may be waived by the custodian of records. The only reference to waiver appears in Evidence Code section 1043, subdivision (c), which provides that “[n]o hearing upon a motion for discovery or disclosure shall be held . . .” without compliance with notice obligations, including notice to the affected officer, “or upon a waiver of the hearing by the governmental agency identified as having the records.” Thus, while the custodian may waive a hearing on whether good cause has been shown, no similar waiver provision appears regarding the duty to find relevance under Evidence Code section 1045. (See California Highway Patrol v. Superior Court (2000) 84 Cal.App.4th 1010, 1016 [101 Cal.Rptr.2d 379] [the trial court conducted an in camera review even though the custodian did not oppose the Pitchess motion].)
The dissent suggests an “unfortunate consequence” of our approach is that a nonlawyer might preside over the administrative hearing and “the nonparty peace officer will have no input” into his selection. (Conc. & dis. opn., post, at p. 649.) The dissent further laments that such a person may order disclosure and “formerly confidential records may be opened to inspection.” (Ibid.) These comments find no footing in actual practice. First, a nonparty officer whose records are sought would never have input into who would decide the Pitchess motion, be it a court or an arbitrator. In any case, that concern is completely unfounded here, where the custodian of records, who is obligated to assert the privilege, and the Sheriffs’ Association, which represents the officer, are involved in the litigation. Second, it is simply not so that officer records would be “opened to inspection.” (Conc. & dis. opn., post, at p. 649.) As noted, officer records disclosed at these private proceedings remain confidential under Penal Code section 832.7. (See Copley Press, supra, 39 Cal.4th at pp. 1286-1299.) Further, the Pitchess statutes themselves restrict use of such records to the proceeding at issue. (Evid. Code, § 1045, subd. (e); Alford, supra, 29 Cal.4th at pp. 1039-1043.)
*645 The dissent first gleans legislative intent regarding the Pitchess statutes from general Evidence Code provisions concerning privileges. We have already addressed the Evidence Code argument, particularly the applicability of Evidence Code section 915, at pages 637-638, ante.
Next, the dissent relies on a repealed provision of the Administrative Procedure Act (APA) (Gov. Code, § 11340 et seq.). Government Code section 11507.6 allows parties in an APA proceeding to request various pretrial discovery from the opposing party. Under Government Code former section 11507.7, if a party failed to comply, the aggrieved party could “file a verified petition to compel discovery in the superior court . . . naming as respondent the party refusing or failing to comply with” pretrial discovery obligations. (Gov. Code, former § 11507.7, subd. (a), added by Stats. 1968, ch. 808, § 5, p. 1562.) The court would thereafter rule on the discovery matter, which included the power to review in camera materials claimed to be privileged. (Gov. Code, former § 11507.7, subds. (d), (e), added by Stats. 1968, ch. 808, § 5, pp. 1562, 1563.) Pointing to this mechanism, which existed at the time the Pitchess statutes were enacted, the dissent asserts that “[t]he Legislature has taken pains historically to identify and limit who may conduct in camera review.” (Cone. & dis. opn., post, at p. 655.) It suggests the Legislature had these provisions in mind when enacting the Pitchess scheme.
This reasoning misses the mark. First, the Legislature has expressly stated that officer personnel records “are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code.” (Pen. Code, § 832.7, subd. (a), italics added.) We have affirmed that “[t]he Pitchess procedure is the sole and exclusive means” to obtain Pitchess discovery, and cases “have rejected attempts to use other discovery procedures to obtain Pitchess records.” (City of Los Angeles v. Superior Court (2002) 29 Cal.4th 1, 21 [124 Cal.Rptr.2d 202, 52 P.3d 129].) Given the Legislature’s adoption of the Pitchess statutes as the exclusive method for discovery of these records, it is doubtful the Legislature contemplated that the repealed APA discovery procedure would apply. This is especially true when neither the language nor legislative history of the Pitchess statutes makes any reference to the APA.
Second, the Legislature could not have contemplated the former APA procedure would apply to Pitchess motions in administrative hearings for the same reasons it could not have contemplated application of section 1991. Like that procedure, Government Code former section 11507.7 required an aggrieved party to file a discovery motion before the superior court would become involved; if a party complied with the discovery request, the court would never need to rule or view the records in camera. Again, the dissent fails to explain why the Legislature would have expressly required an in *646 camera review of records before disclosure under Evidence Code section 1045, yet countenanced application of a scheme that would have allowed disclosure of records without such review.
Third, the motion under Government Code former section 11507.7 only applied to discovery violations by parties. (See Gov. Code, former §§ 11507.6 [pretrial discovery obligation of parties], 11507.7, subd. (a).) By contrast, Pitchess motions are directed at “the governmental agency which has custody and control of the records” (Evid. Code, § 1043, subd. (a)), even when the custodian is not a party to the litigation. The Legislature could not have believed this vastly different scheme would have any application to the Pitchess statutes.
Fourth, the Legislature’s subsequent amendment of Government Code former section 11507.7 presents strong evidence that the Legislature never believed it applied to the Pitchess scheme. As the dissent acknowledges, the Legislature in 1995, as part of a comprehensive overhaul of the APA (see Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd. (2006) 40 Cal.4th 1, 5 [50 Cal.Rptr.3d 585, 145 P.3d 462]), amended Government Code former section 11507.7 to allow an administrative law judge (ALJ) to rule on discovery matters, which included the power to examine privileged materials if necessary to make a ruling. (See Gov. Code, § 11507.7, subd. (d).) An ALJ is a specialized arbitrator on staff with the Office of Administrative Hearings, and the APA requires all hearings under its provisions to be conducted by an ALJ. (Gov. Code, § 11502, subd. (a).)
Under the dissent’s view, the 1995 amendment to the APA created a distinction between ALJs and non-ALJ arbitrators. Thus, with respect to a Pitchess motion after 1995, an ALJ now can conduct an in camera review of records under Evidence Code section 1045, because Government Code section 11507.7 generally gives ALJs the power to review privileged materials in camera, whereas non-ALJ arbitrators cannot. The dissent acknowledges that the Legislature never amended the Pitchess statutes to reflect this asserted intent. Indeed, the dissent, in attacking our interpretation of the scheme, makes much of the fact that Evidence Code section 1045 repeatedly uses “the court,” and reasons that “the Legislature has been precise in its choice of terminology” and “[w]e should take the Legislature at its word.” (Conc. & dis. opn., post, at p. 653.) However, after 1995, and to this day, Evidence Code section 1045 still uses “the court,” making no reference to ALJs or the APA.
The dissent cannot have it both ways. If the Legislature intended that the 1995 amendment of the APA constituted a substantive modification of the Pitchess scheme, such a change would have constituted a significant departure in the law. Yet the dissent posits this major change resulted solely from *647 silent implication. It is doubtful that the Legislature would have instituted such a significant change through silence. While the law can occasionally be subtle, we should avoid constructions that render it delphic. Indeed, the 1995 bill constituted a comprehensive amendment of the APA and numerous related statutes. It amended or added over 100 different laws spanning 16 codes, including not only provisions of the Government, Evidence, and Penal Codes, but sections of the Health and Safety, Business and Professions, Labor, Revenue and Taxation, Welfare and Institutions, Vehicle, Fish and Game, Financial, Education, Military and Veterans, Public Resources, Public Utilities, and Unemployment Insurance Codes as well. (See Stats. 1995, ch. 938, pp. 7104-7225.) It is difficult to believe that the Legislature intended the amendment to the APA to change the Pitchess statutes, yet chose not to modify them expressly as it did with respect to dozens of other statutes tangentially related to the APA.
Responding to our discussion of Government Code former section 11507.7, the dissent states it “take[s] no position” on the interaction between the repealed APA procedure and the Pitchess scheme because “the issue is, after all, long since moot.” (Conc. & dis. opn., post, at p. 654.) The dissent suggests we are imputing to it a position about the applicability of the APA that it has not taken. (Conc. & dis. opn. post, at p. 657.) The dissent misapprehends the import of our discussion. The dissent asserts that “the Legislature had taken the extraordinary step of creating a special statutory transfer mechanism to allow privilege disputes arising in administrative matters to be resolved by the only body authorized to conduct in camera review, a court.” (Id. at p. 648.) The dissent reasons that the existence of these transfer mechanisms shows “the Legislature took seriously the limits on the powers of nonjudicial officers” (id. at p. 651), and, thus, the Legislature’s use of “the court” in Evidence Code section 1045 meant only courts are authorized to conduct in camera review. However, as noted, that transfer mechanisms such as section 1991 and Government Code former section 11507.7 do not fit the Pitchess procedure shows that the Legislature could not have had them in mind when enacting the Pitchess statutes. And the fact that the Legislature did not amend the Pitchess statutes in 1995 when granting ALJs authority to conduct in camera review further supports our view that the Legislature did not consider the former APA transfer mechanism when enacting the Pitchess scheme.
Rather than gleaning legislative intent from general statutes of questionable applicability, the better view recognizes that the Legislature, by expressly allowing Pitchess motions to be filed with an appropriate administrative body under Evidence Code section 1043, contemplated administrative Pitchess motions from the very beginning of the scheme. To conclude that administrative hearing officers lack authority to rule on them effectively reads this language out of the statute. If the Legislature intended to keep hearing *648 officers from ruling on such motions, or to require that only courts conduct the in camera review, it certainly could have done so by providing that such motions not be filed before hearing officers, or by expressly creating a transfer mechanism to the superior court. It did neither. Our conclusion harmonizes the Pitchess scheme with Evidence Code sections 914 and 915. It is consistent with Penal Code section 832.7 and our holding that the confidentiality of officer personnel records extends to administrative proceedings. Finally, allowing administrative hearing officers to determine Pitchess motions in this context furthers the goals of the POBRA and maintains the balance between an officer’s interest in privacy and a litigant’s interest in discovery. Of course, the Legislature remains free to clarify its intent as to the authority of administrative hearing officers in this context, and to take additional steps to protect the confidentiality of officer personnel records in the administrative context.
III. DISPOSITION
The judgment of the Court of Appeal is affirmed.
Cantil-Sakauye, C. J., Chin, J., Liu, J., and Willhite, J.,* concurred.

 Penal Code section 832.8 defines personnel records as any file maintained under an individual’s name by his or her employer, and includes information such as personal data, medical history, employee “advancement, appraisal, or discipline,” complaints or investigation of complaints pertaining to the performance of the officer’s duties, and “[a]ny other information the disclosure of which would constitute an unwarranted invasion of personal privacy.”

 Information excluded from disclosure includes complaints regarding incidents occurring five or more years before the event at issue, facts “that are so remote as to make disclosure of little or no practical benefit,” and, in any criminal case, the conclusions of an officer investigating a complaint. (Evid. Code, § 1045, subd. (b).)

 See Evidence Code section 1045, subdivisions (b) (“In determining relevance, the court shall examine . . . .”), (c) (“the court shall consider”), (d) (“the court may make any order which justice requires”), (e) (“The court shall. . . order that the records disclosed or discovered may not be used for any purpose other than a court proceeding pursuant to applicable law.”). The department counts as a sixth reference the use of “the court” in Evidence Code section 915, subdivision (b). This statute predated the statutory Pitchess scheme, and its reference to “the court” does not support the department’s position in any event.

 Unspecified statutory references are to the Code of Civil Procedure.

 See Shively v. Stewart (1966) 65 Cal.2d 475, 479-480 [55 Cal.Rptr. 217, 421 P.2d 65] (nonstatutory discovery); Citizens Utilities Co. v. Superior Court (1963) 59 Cal.2d 805, 811-813 [31 Cal.Rptr. 316, 382 P.2d 356] (compensation for mandatory improvements made after condemnation); Tide Water Associated Oil Co. v. Superior Court (1955) 43 Cal.2d 815, 825-826 [279 P.2d 35] (cross-complaints); People v. Castello (1998) 65 Cal.App.4th 1242, 1246-1250 [77 Cal.Rptr.2d 314] (reconsideration of interim ruling); In re Amber S. (1993) 15 Cal.App.4th 1260, 1263-1267 [19 Cal.Rptr.2d 404] (control of testimony); Cottle v. Superior Court (1992) 3 Cal.App.4th 1367, 1376-1381 [5 Cal.Rptr.2d 882] (exclusion of evidence); Asbestos Claims Facility v. Berry & Berry (1990) 219 Cal.App.3d 9, 18-23 [267 Cal.Rptr. 896] (designating defense counsel program in asbestos litigation); Peat, Marwick, Mitchell & Co. v. Superior Court (1988) 200 Cal.App.3d 272, 286-291 [245 Cal.Rptr. 873] (evidence sanction); James H. v. Superior Coun (1978) 77 Cal.App.3d 169, 175-176 [143 Cal.Rptr. 398] (juvenile competency hearing); cf. Rutherford v. Owens-Illinois, Inc. (1997) 16 Cal.4th 953, 967-968 [67 Cal.Rptr.2d 16, 941 P.2d 1203] (control of litigation); Walker v. Superior Court (1991) 53 Cal.3d 257, 266-267 [279 Cal.Rptr. 576, 807 P.2d 418] (preunification authority to transfer cases to the municipal court).

 See Evidence Code section 914, subdivision (a) (“The presiding officer shall determine a claim of privilege in any proceeding in the same manner as a court determines such a claim under Article 2 (commencing with Section 400) of Chapter 4 of Division 3.”).

 The parties are free to include other protective language in their MOUs, including an explicit agreement that any Pitchess material can only be used in connection with the proceeding in which it is sought.

 People v. Memro (1985) 38 Cal.3d 658 [214 Cal.Rptr. 832, 700 P.2d 446], overruled on another ground in People v. Gaines (2009) 46 Cal.4th 172, 181, footnote 2 [92 Cal.Rptr.3d 627, 205 P.3d 1074].

Associate Justice of the Court of Appeal, Second Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.