# IN THE SUPREME COURT OF CALIFORNIA

ASSOCIATION FOR LOS ANGELES DEPUTY SHERIFFS,
Petitioner,

v.

THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;

LOS ANGELES COUNTY SHERIFF'S DEPARTMENT et al.,
Real Parties in Interest.

S243855

Second Appellate District, Division Eight
B280676

Los Angeles County Superior Court
BS166063

August 26, 2019

Chief Justice Cantil-Sakauye authored the opinion of the
Court, in which Justices Chin, Corrigan, Liu, Cuéllar, Kruger
and Groban concurred.

ASSOCIATION FOR LOS ANGELES DEPUTY SHERIFFS v.
SUPERIOR COURT

S243855

Opinion of the Court by Cantil-Sakauye, C. J.

This case concerns the relationship between prosecutors' constitutional duty to disclose information to criminal defendants and a statutory scheme that restricts prosecutors' access to some of that information.

A prosecutor in a criminal case must disclose to the defense certain evidence that is favorable to the accused. (*Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*).) This duty sometimes requires disclosure of evidence that will impeach a law enforcement officer's testimony. (*Giglio v. United States* (1972) 405 U.S. 150, 154-155 (*Giglio*).) Such disclosure may be required even if the prosecutor is not personally aware that the evidence exists. (*Kyles v. Whitley* (1995) 514 U.S. 419, 437 (*Kyles*).) Because the duty to disclose may sweep more broadly than the prosecutor's personal knowledge, the duty carries with it an obligation to "learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." (*Ibid.*)

The so-called *Pitchess* statutes, however, restrict a prosecutor's ability to learn of and disclose certain information regarding law enforcement officers. (See *Pitchess v. Superior Court* (1974) 11 Cal.3d 531; see also *Johnson v. Superior Court* (2015) 61 Cal.4th 696, 712-714 (*Johnson*).) Most notably, Penal Code section 832.7 renders confidential certain personnel records and records of citizens' complaints, as well as

information "obtained from" those records. (Pen. Code, § 832.7, subd. (a) (section 832.7(a)).) Upon a motion showing good cause, a litigant may obtain a court's in camera inspection of the confidential information and, possibly, win the information's disclosure. But the less reason there is to believe that an officer has engaged in misconduct, the harder it is to show good cause.

In part to address this issue, some law enforcement agencies have created so-called *Brady* lists. These lists enumerate officers whom the agencies have identified as having potential exculpatory or impeachment information in their personnel files — evidence which may need to be disclosed to the defense under *Brady* and its progeny. (See *Brady*, *supra*, 373 U.S. at p. 87.) Disclosure of the fact that an officer is on a *Brady* list both signals that it may be appropriate to file a motion seeking in camera inspection and helps to establish good cause for that inspection. We recently described this *Brady*-alert practice as "laudabl[e]." (*Johnson*, *supra*, 61 Cal.4th at p. 721.)

Petitioner in this case is the Association for Los Angeles Deputy Sheriffs. The Association obtained a preliminary injunction preventing the Los Angeles County Sheriff's Department from disclosing the identity of deputies on the Department's *Brady* list. The injunction included an exception, permitting disclosure to prosecutors when a deputy is a potential witness in a pending prosecution. The Court of Appeal held that the exception is impermissible under the *Pitchess* statutes. We granted review to decide the following question: "When a law enforcement agency creates an internal *Brady* list [citation], and a peace officer on that list is a potential witness in a pending criminal prosecution, may the agency disclose to the prosecution (a) the name and identifying number of the

officer and (b) that the officer may have relevant exonerating or impeaching material in [that officer's] confidential personnel file . . . ?" We conclude that the *Pitchess* statutes permit such disclosure.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. The *Brady* List

In late 2016, the Association counted among its members approximately 7,800 deputy sheriffs. The Department sent a letter to roughly 300 of those deputies, informing them that a review of "individual employees' personnel records" had "identified potential exculpatory or impeachment information in your personnel file." Among other things, the letter served to "remind" deputies "about the existence of this material."

According to the letter, "[e]xamples of performance deficiencies" that qualify as potential *Brady* material "include, but are not limited to, founded administrative investigations involving violations of" any of nearly a dozen sections of the Department's Manual of Policy and Procedures. Those sections concern: (1) "Immoral Conduct"; (2) "Bribes, Rewards, Loans, Gifts, Favors"; (3) "Misappropriation of Property"; (4) "Tampering with Evidence"; (5) "False Statements"; (6) "Failure to make Statements and/or Making False Statements During Departmental Internal Investigations"; (7) "Obstructing an Investigation/Influencing a Witness"; (8) "False Information in Records"; (9) "Policy of Equality – Discriminatory Harassment"; (10) "Unreasonable Force"; and (11) "Family Violence." Notwithstanding the letter's claim that such violations were mere "[e]xamples of performance deficiencies" that might justify inclusion on the *Brady* list, other materials in the record suggest that the letter was only sent to

deputies understood to have violated at least one of those enumerated policies.

The letter further advised deputies that, "in order to comply with our constitutional obligations," the Department is "required to provide the names of employees with potential exculpatory or impeachment material in their personnel file to the District Attorney and other prosecutorial agencies where the employee may be called as a witness." Later correspondence indicated that the deputy's employee number might also be provided. Consistent with that later correspondence, however, the initial letter stressed that "no portion of an investigation or contents of your file will be turned over to either the prosecution or the defense absent a court order." Deputies were also afforded an opportunity to object to their inclusion on the *Brady* list, by informing the Department that "the deputy did not have a founded administrative investigation finding on one of the above policy violations" or that "any such founded investigation had been overturned in a settlement agreement or pursuant to an appeal."

## B. Trial Court

As relevant here, the Association filed a petition for writ of mandate and a complaint seeking preliminary and permanent injunctive relief. It sought to prevent the Department from disclosing the identity of deputies on the *Brady* list absent compliance with *Pitchess* procedures. The Department agreed to postpone disclosure until the court ruled on the request for a preliminary injunction. (*Association for Los Angeles Deputy*

4

*Sheriffs v. Superior Court* (2017) 13 Cal.App.5th 413, 421
(*Deputy Sheriffs*).)[1]

The trial court granted the request in part. It agreed with
the Association that the identity of peace officers on the *Brady*
list was confidential under the *Pitchess* statutes because the list
linked officers to disciplinary action reflected in their personnel
records. The court further agreed that *Brady* did not authorize
disclosure of the list at the Department's discretion,
unconnected to any criminal case. Over the Association's
objection, however, the court ruled that the Department was
"*not . . .* enjoined from disclosing the fact that an individual
Deputy Sheriff is listed on the Sheriff's Department's 'Brady
List' when a criminal prosecution is pending and the Deputy
Sheriff at issue is involved in the pending prosecution as a
potential witness."

## C. Court of Appeal

The Association petitioned the Court of Appeal for a writ
of mandate and requested an immediate stay. The court
granted the stay request, effectively expanding the trial court's
injunction to prevent disclosure of officer identities (outside of
the *Pitchess* process) without regard to whether a prosecution
was pending. After issuing an order to show cause, a divided
panel of the Court of Appeal granted the writ petition in

---

[1] The Association sought relief against several other
individuals or entities, including then-Sheriff Jim McDonnell
and the County of Los Angeles. For ease of reference, and
because these real parties in interest are similarly situated, we
refer to the Department throughout.

pertinent part. (*Deputy Sheriffs*, *supra*, 13 Cal.App.5th at p. 448.)

The Court of Appeal observed that the *Pitchess* statutes make confidential certain personnel records and information obtained from those records. (*Deputy Sheriffs*, *supra*, 13 Cal.App.5th at p. 433.) Echoing the trial court, the Court of Appeal reasoned that "[n]otifying an outside agency, even a prosecutor's office, that a deputy has an administratively founded allegation of misconduct . . . cannot be characterized as anything other than disclosing information obtained from the peace officer's personnel file." (*Id.*, at p. 435.) The appellate court did not agree, however, that disclosure could be made whenever an officer on the *Brady* list was a potential witness in a pending case. The court thus ordered the trial court "to strike from the injunction any language" permitting disclosure of "the identity of any individual deputy on the . . . *Brady* list to any individual or entity outside the [Department], even if the deputy is a witness in a pending criminal prosecution, absent a properly filed, heard, and granted *Pitchess* motion, accompanied by a corresponding court order." (*Id.*, at p. 448.)

Justice Grimes dissented in pertinent part. She concluded that a *Pitchess* motion is not "required to transfer, between members of the prosecution team, the identities of officers involved in a pending prosecution who may have *Brady* materials in their personnel records." (*Deputy Sheriffs*, *supra*, 13 Cal.App.5th at p. 449 (conc. & dis. opn. of Grimes, J.).)

### D. Enactment of Senate Bill 1421

We granted review. While this matter was pending before us, Senate Bill No. 1421 (2017-2018 Reg. Sess.) (Senate Bill 1421) amended one of the statutes relevant to the question

6

presented. (See Stats. 2018, ch. 988, § 2, eff. Jan. 1, 2019; see also § 832.7(a).) We obtained supplemental briefing regarding the significance of the enactment.

## II. *BRADY* AND *PITCHESS*

We begin by describing *Brady* and *Pitchess*, as an understanding of each is necessary to understanding the relationship between them. (See, e.g., *City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 7-10 (*City of Los Angeles*).)

### A. *Brady*

The Fourteenth Amendment to the federal Constitution prohibits states from denying any person due process of law. (U.S. Const., 14th Amend.) This guarantee of due process affords criminal defendants the right to a fair trial, "impos[ing] on States certain duties consistent with their sovereign obligation to ensure 'that "justice shall be done." ' " (*Cone v. Bell* (2009) 556 U.S. 449, 451.)

Prosecutors, as agents of the sovereign, must honor these obligations. (See *Kyles*, *supra*, 514 U.S. at p. 438; *Mooney v. Holohan* (1935) 294 U.S. 103, 112-113 (*per curiam*).) A prosecutor must refrain from using evidence that the prosecutor knows to be false. (*Mooney*, at pp. 112-113; see also *Pyle v. State of Kansas* (1942) 317 U.S. 213, 216.) A prosecutor must correct false evidence "when it appears." (*Napue v. Illinois* (1959) 360 U.S. 264, 269.) And, under *Brady*, a prosecutor must disclose to the defense evidence that is "favorable to [the] accused" and "material either to guilt or to punishment." (*Brady*, *supra*, 373 U.S. at p. 87.)

"For *Brady* purposes, evidence is favorable if it helps the defense or hurts the prosecution, as by impeaching a prosecution

witness." (*People v. Zambrano* (2007) 41 Cal.4th 1082, 1132; see also *United States v. Bagley* (1985) 473 U.S. 667, 676; *Giglio*, *supra*, 405 U.S. at pp. 154-155.) Evidence is material " 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " (*Kyles*, *supra*, 514 U.S. at pp. 433-434.) Evaluating materiality requires consideration of the collective significance of the undisclosed evidence (*Kyles*, at p. 436), as well as "the effect of the nondisclosure on defense investigations and trial strategies" (*Zambrano*, at p. 1132). (See also *Kyles*, at p. 439; *Bagley*, at p. 701 (dis. opn. of Marshall, J.).) "A reasonable probability does not mean that the defendant 'would more likely than not have received a different verdict with the evidence,' only that the likelihood of a different result is great enough to 'undermine[] confidence in the outcome of the trial.' " (*Smith v. Cain* (2012) 565 U.S. 73, 75.)

This materiality standard applies both after judgment, when evaluating whether *Brady* was violated, and before judgment, when evaluating whether evidence favorable to the defense must be disclosed. (See *Kyles*, *supra*, 514 U.S. at pp. 437-438; *United States v. Agurs* (1976) 427 U.S. 97, 108.) Because it may be difficult to know before judgment what evidence will ultimately prove material, "the prudent prosecutor will resolve doubtful [*Brady*] questions in favor of disclosure." (*Agurs*, at p. 108; see also *Kyles*, at pp. 438-439.) Statutory and ethical obligations may require even more. (See, e.g., Pen. Code, § 1054.1, subds. (d)-(e) [statutory disclosure obligation]; Rules Prof. Conduct, rule 3.8(d) & com. [3] [ethical disclosure obligation].)

8

### B. *Pitchess*

Without relying on *Brady*, our decision in *Pitchess* "recognized that a criminal defendant may, in some circumstances, compel the discovery of evidence in the arresting law enforcement officer's personnel file that is relevant to the defendant's ability to defend against a criminal charge." (*People v. Mooc* (2001) 26 Cal.4th 1216, 1219 (*Mooc*).) "In 1978, the Legislature codified the right" and defined "which officer records are subject to *Pitchess* discovery." (*Galindo v. Superior Court* (2010) 50 Cal.4th 5.) "The statutory scheme is set forth in Evidence Code sections 1043 through 1047 and Penal Code sections 832.5, 832.7, and 832.8." (*Mooc*, at p. 1226.) These *Pitchess* statutes "reflect[] the Legislature's attempt to balance a litigant's discovery interest with an officer's confidentiality interest." (*Riverside County Sheriff's Dept. v. Stiglitz* (2014) 60 Cal.4th 624, 639 (*Stiglitz*).)

The threshold question under the *Pitchess* statutes is whether the information requested is confidential. (See Pen. Code, § 832.7, subds. (a)-(b).) If it is, the information may generally be disclosed only "by discovery pursuant to" Evidence Code sections 1043, 1045, and 1046. (§ 832.7(a); see *Johnson, supra*, 61 Cal.4th at p. 712, fn. 2.) Requests for disclosure are ordinarily made in criminal cases but may also arise in connection with civil or quasi-criminal proceedings. (See § 832.7(a); see also, e.g., *Stiglitz, supra*, 60 Cal.4th at p. 628 [appeal of employee discipline]; *City of San Jose v. Superior Court* (1993) 5 Cal.4th 47, 53 (*City of San Jose*) [juvenile wardship proceeding].)

A party seeking disclosure under the *Pitchess* statutes must file a written motion and give notice to the agency with

custody and control of the records. (Evid. Code, § 1043, subd. (a).) Among other things, the motion must identify the officer or officers at issue (*id.*, § 1043, subd. (b)(1)); describe "the type of records or information" desired (*id.*, § 1043, subd. (b)(2)); and, by affidavit, show "good cause for the discovery or disclosure sought" (*id.*, § 1043, subd. (b)(3)).[2]

This "good cause" requirement has two components. First, the movant must set forth "the materiality" of the information sought "to the subject matter involved in the pending litigation." (Evid. Code, § 1043, subd. (b)(3).) The function of this requirement is to "exclude[] requests for officer information that are irrelevant to the pending charges." (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1021.) If the movant shows that the request is "relevant to the pending charges, and explains how, the materiality requirement will be met." (*Johnson*, *supra*, 61 Cal.4th at p. 721; see also *Richardson v. Superior Court* (2008) 43 Cal.4th 1040, 1048-1049 ["The materiality standard is met if evidence of prior complaints is admissible or may lead to admissible evidence"].) If information is "material" within the meaning of *Brady*, it is necessarily material "to the subject matter involved in" a criminal prosecution. (Evid. Code, § 1043, subd. (b)(3); see *City of Los Angeles*, *supra*, 29 Cal.4th at p. 10.)

Second, the "good cause" requirement obliges the movant to articulate "a 'reasonable belief' that the agency has the type

---

[2] The affidavit may be executed by an attorney based on information and belief; personal knowledge is not required. (See *Garcia v. Superior Court* (2007) 42 Cal.4th 63, 74; see also *City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 73, 86 (*City of Santa Cruz*); *People v. Memro* (1985) 38 Cal.3d 658, 676 (*Memro*).)

of information sought." (*City of Santa Cruz*, *supra*, 49 Cal.3d at
p. 84; see also Evid. Code, § 1043, subd. (b)(3).)  This belief "may
be based on a rational inference" (*Johnson*, *supra*, 61 Cal.4th at
p. 721); for example, that because officers allegedly used
excessive force in a pending case, "other complaints of excessive
force 'may have been filed' " (*City of Santa Cruz*, at p. 90; see
also *id.*, at p. 93, fn. 9).  Certainly, a movant is not required " 'to
allege with particularity the very information' " sought.
(*Johnson*, at p. 721, quoting *Memro*, *supra*, 38 Cal.3d at p. 684.)
At the least, the requisite "reasonable belief" exists when a
movant declares that the agency from which the movant seeks
records has placed the officer at issue on a *Brady* list.  (See *ibid*.)

The function of the "good cause" requirement at this stage
of the *Pitchess* process is not to determine whether documents
will be disclosed to the movant; it is to determine whether
information will be reviewed in camera.  Accordingly, the
burden imposed by the requirement "is not high." (*Johnson*,
*supra*, 61 Cal.4th at p. 720; see *City of Santa Cruz*, *supra*,
49 Cal.3d at p. 84 [requirement is designed to ensure "the
production for inspection of all potentially relevant
documents"].)

When a court determines that a movant has made a
showing sufficient to justify in camera inspection, "the custodian
of records should bring to court all documents 'potentially
relevant' to the . . . motion." (*Mooc*, *supra*, 26 Cal.4th at
p. 1226.)  "[I]f the custodian has any doubt whether a particular
document is relevant, [the custodian] should present it to the
trial court." (*Id.*, at p. 1229.)  The court must examine those
documents "in conformity with [Evidence Code] section 915 (i.e.,
out of the presence of all persons except the person authorized

to claim the privilege and such other[s as that person] is willing to have present)." (*City of Santa Cruz, supra*, 49 Cal.3d at p. 83; see Evid. Code, §§ 915, 1045, subd. (b).) To facilitate appellate review, the court should make a record of what it has examined. (See *People v. Townsel* (2016) 63 Cal.4th 25, 69; see also *Mooc*, at p. 1229-1230; see generally *People v. Gaines* (2009) 46 Cal.4th 172.) Questioning the custodian of records under oath regarding which documents were produced helps both to facilitate appellate review and to ensure that information is not withheld from the movant improperly. (See *Mooc*, at p. 1229 & fn. 4.)

After conducting in camera review, a court has discretion regarding which documents, if any, it will disclose to a movant. (See, e.g., *People v. Myles* (2012) 53 Cal.4th 1181, 1209.) Evidence Code section 1045 guides the exercise of that discretion, requiring the court to "exclude from disclosure" certain information (*id.*, § 1045, subd. (b)(1)-(3)) and to "consider" whether the movant could obtain certain other information without disclosure of individual personnel records (*id.*, § 1045, subd. (c)). (See also Evid. Code, § 1047; *Stiglitz, supra*, 60 Cal.4th at pp. 641-642.) Notwithstanding these provisions, however, the court must disclose information that is favorable to the defense and "material" within the meaning of *Brady*. (*Johnson, supra*, 61 Cal.4th at p. 720.)

Finally, the *Pitchess* statutes protect information that is disclosed to a movant from further dissemination. "The court shall, in any case or proceeding permitting the disclosure or discovery of any peace or custodial officer records requested pursuant to [Evidence Code] Section 1043, order that the records disclosed or discovered may not be used for any purpose other than a court proceeding pursuant to applicable law."

(Evid. Code, § 1045, subd. (e); see generally *Chambers v. Superior Court* (2007) 42 Cal.4th 673; *Alford v. Superior Court* (2003) 29 Cal.4th 1033.) Upon a proper motion by the custodian or the officer at issue, the court may also "make any order which justice requires to protect the officer or agency from unnecessary annoyance, embarrassment or oppression." (Evid. Code, § 1045, subd. (d).)

### III. ANALYSIS

Familiar principles of statutory interpretation guide our analysis of the *Pitchess* statutes. (See, e.g., *People v. Castillolopez* (2016) 63 Cal.4th 322, 329 [describing those principles].) In particular, we bear in mind that the *Pitchess* statutes "must be viewed against the larger background of the prosecution's" *Brady* obligation "so as not to infringe the defendant's right to a fair trial." (*Mooc*, *supra*, 26 Cal.4th at p. 1225.) As discussed below, these principles point toward two main conclusions. First, the Department's *Brady* list is confidential to the extent it was derived from confidential records. Second, the Department does not violate that confidentiality by sharing with prosecutors the identity of potential witnesses on the *Brady* list.

### A. The Department's *Brady* List Is Confidential to the Extent That Officers Were Included on the List Because of Information Obtained from Confidential Records

To the extent the Department placed officers on the *Brady* list based on information found in confidential records, the identities of those officers were "obtained from" the records and are thus also confidential. (§ 832.7(a).) Under legislation enacted while this litigation was pending, however, certain

records related to officer misconduct are not confidential. (See Pen. Code, § 832.7, subd. (b) (section 832.7(b)).) Because such records are not confidential, information "obtained from" those records is also not confidential. (§ 832.7(a).) With one possible exception not relevant here (see *id.*, § 832.7, subd. (b)(8)), the *Pitchess* statutes do not prevent the Department from disclosing — to anyone — the identity of officers whose records contain that nonconfidential information.

### 1. *Section 832.7(a) creates three categories of confidential information*

In pertinent part, section 832.7(a) instructs that, "[e]xcept as provided in subdivision (b), the personnel records of peace officers and custodial officers and records maintained by any state or local agency pursuant to [Penal Code] Section 832.5, or information obtained from these records, *are confidential* and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code." (Italics added.) This provision does not merely restrict disclosure in criminal and civil proceedings; it creates a generally applicable condition of confidentiality and recognizes an exception for "discovery pursuant to" certain portions of the Evidence Code. (*Ibid.*; see *Copley Press, Inc. v. Superior Court* (2006) 39 Cal.4th 1272, 1285-1286 (*Copley Press*).)

Absent an exception, the confidentiality afforded by section 832.7(a) extends to three categories of information. (See *Copley Press, supra*, 39 Cal.4th at p. 1284.) First, it reaches "personnel records of peace officers and custodial officers." (§ 832.7(a).) Among other things, this category shields certain records that relate to "[e]mployee . . . discipline" (Pen. Code, § 832.8, subd. (a)(4)) or certain "[c]omplaints, or investigations

of complaints, . . . pertaining to the manner in which [the employee] performed [the employee's] duties" (*id.*, § 832.8, subd. (a)(5)). (See also *Long Beach Police Officers Assn. v. City of Long Beach* (2014) 59 Cal.4th 59, 71-72 (*Long Beach*); *Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 291 (*Commission on POST*).)

The second category of confidential information encompasses "records maintained by any state or local agency pursuant to [Penal Code] Section 832.5." (§ 832.7(a).) Section 832.5 "requires '[e]ach department or agency in [California] that employs peace officers [to] establish a procedure to investigate complaints by members of the public against the personnel of these departments or agencies . . . .' " (*Copley Press*, *supra*, 39 Cal.4th at p. 1283, quoting Pen. Code, § 832.5, subd. (a)(1).) Such "[c]omplaints and any reports or findings relating" to them "shall be retained for a period of at least five years," and must generally be "maintained either in the peace or custodial officer's general personnel file or in a separate file." (Pen. Code, § 832.5, subd. (b); see also *id.*, § 832.5, subds. (c), (d)(1).)

The third and final category of confidential information is "information obtained from" the prior two types of records. (§ 832.7(a); see *Commission on POST*, *supra*, 42 Cal.4th at p. 289.) "In its ordinary sense, to obtain information means to come into possession of it." (*International Federation of Professional & Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 344, italics removed.) Thus, the phrase "information obtained from" certain records (§ 832.7(a)) "is most reasonably read to encompass information that was acquired from" those records (*Internat. Federation*, at p. 344).

### 2. *Senate Bill 1421 excludes certain information from section 832.7(a)'s provision of confidentiality*

Senate Bill 1421 amended Penal Code section 832.7. The plain text of the amended statute excludes certain information from the confidentiality afforded by section 832.7(a). As amended, subdivision (a) applies "[e]xcept as provided in subdivision (b)." Subdivision (b) declares in turn that, "[n]otwithstanding . . . any other law," certain "peace officer or custodial officer personnel records and records maintained by any state or local agency *shall not be confidential* and shall be made available for public inspection pursuant to the California Public Records Act." (Pen. Code, § 832.7, subd. (b)(1), italics added.) It follows that if subdivision (b) deems records "not . . . confidential," they are not "confidential" under subdivision (a). And if records are "not . . . confidential" because of subdivision (b), it would be nonsensical to conclude that subdivision (a) renders "information obtained from" those nonconfidential records "confidential." Thus, if subdivision (b) deems a record nonconfidential, the record, or information obtained from it, is not confidential.

Senate Bill 1421 deems three types of records nonconfidential. First, records "relating to the report, investigation, or findings" of an incident in which an officer (i) discharged a firearm at a person or (ii) used force against a person resulting in death or great bodily injury. (Pen. Code, § 832.7, subd. (b)(1)(A).) Second, records "relating to an incident in which a sustained finding was made by any law enforcement agency or oversight agency" that an officer "engaged in sexual assault involving a member of the public." (*Id.*, § 832.7, subd. (b)(1)(B)(i).) And third, "[a]ny record relating to an incident in

16

which a sustained finding was made by any law enforcement agency or oversight agency of dishonesty by a peace officer or custodial officer directly relating to the reporting, investigation, or prosecution of a crime, or directly relating to the reporting of, or investigation of misconduct by, another peace officer or custodial officer, including, but not limited to, any sustained finding of perjury, false statements, filing false reports, destruction, falsifying, or concealing of evidence." (*Id.*, § 832.7, subd. (b)(1)(C); see also *id.*, § 832.7, subd. (b)(2)-(4).) Any portion of a *Brady* list based on these types of records is not confidential, and section 832.7(a) does not restrict dissemination of such information.

It is true that Senate Bill 1421 does not "affect the discovery or disclosure of information contained in a peace or custodial officer's personnel file pursuant to Section 1043 of the Evidence Code." (Pen. Code, § 832.7, subd. (g).) Nor does it "supersede or affect the criminal discovery process outlined in Chapter 10 (commencing with [Evidence Code] Section 1054) of Title 6 of Part 2, or the admissibility of personnel records pursuant to subdivision (a), which codifies the court decision in *Pitchess v. Superior Court* (1974) 11 Cal.3d 531." (*Id.*, § 832.7, subd. (h).) But these provisions are beside the point. It may be that Senate Bill 1421 does not expand the set of information that a criminal defendant is entitled to receive through the *Pitchess* process, an issue on which we need take no position here. For present purposes, it is enough to say that even if Senate Bill 1421 does not increase the amount of information that a defendant can *compel* an agency to disclose, the bill, by making certain records nonconfidential, reduces the amount of

information that agencies are *forbidden* from disclosing voluntarily.

We do not suggest that nonconfidential records must be fully disclosed, at any time, under the California Public Records Act. As amended, Penal Code section 832.7 contemplates that it may be appropriate for an agency to redact records (*id.*, § 832.7, subd. (b)(5)-(6)) or to delay disclosure of records to avoid interference with certain investigations or enforcement proceedings (*id.* § 832.7, subd. (b)(7)). Moreover, separate and apart from any confidentiality, Penal Code section 832.7, subdivision (b)(8) instructs that "[a] record of a civilian complaint, or the investigations, findings, or dispositions of that complaint, shall not be released pursuant to this section if the complaint is frivolous, as defined in Section 128.5 of the Code of Civil Procedure, or if the complaint is unfounded." Thus, our conclusion that records described in section 832.7(b) are not "confidential" (§ 832.7(a)) does not mean that they are invariably open for public inspection over the agency's objection.[3]

With this revised statutory scheme in mind, we turn to the question whether the Department's *Brady* list is confidential.

3. *The record does not support a conclusion that the* Brady *list is nonconfidential*

Putting subdivision (b) aside, there is no serious question that the Department reviewed "the personnel records of peace

---

[3] We express no view regarding whether an agency "release[s]" records concerning frivolous or unfounded civilian complaints "pursuant to this section" when it shares them only with a prosecutor's office. (Pen. Code, § 832.7, subd. (b)(8).)

officers" when creating the *Brady* list. (§ 832.7(a).) The parties do not dispute that the deputies included on the list are "peace officers." (*Ibid.*) Nor is there any doubt that the Department created its list by reviewing "the personnel records of" those officers. (*Ibid.*) The Department's initial letter to deputies explained that they were being contacted because a review of "personnel records" "identified potential exculpatory or impeachment information in your personnel file." Later correspondence clarified that deputies were contacted "due to a prior FOUNDED allegation of misconduct involving the Manual of Policies and Procedures (MPP), i.e.[,] a sustained finding that reflects moral turpitude, untruthfulness, or bias." This phrasing appears to refer to the statutory definition of " '[s]ustained,' " which "means a final determination . . . , following an investigation . . . that the actions of the peace officer or custodial officer were found to violate law or department policy." (Pen. Code, § 832.8, subd. (b); see also *id.*, § 832.8, subd. (c) [" 'Unfounded' means that an investigation clearly establishes that the allegation is not true"].) Given this record, we have no reason to doubt that the Department created the *Brady* list by reviewing, at the least, personnel records "relating to . . . [¶] . . . [e]mployee . . . discipline." (*Id.*, § 832.8, subd. (a)(4) [defining personnel records].)

This conclusion entails another: The identities of officers on the *Brady* list constitute "information obtained from" "the personnel records of peace officers." (§ 832.7(a).) The *Brady* list is a catalog of officers with a particular kind of discipline-related information in their personnel file. It was derived from information in those files. It follows that, barring the applicability of an exception, the *Pitchess* statutes render

confidential the identities of officers on the *Brady* list. To hold otherwise would mean that section 832.7(a) affords the *Brady* list no protection at all.

An amicus curiae brief contends that the phrase "information obtained from these records" (§ 832.7(a)) "could reasonably be interpreted to refer only to information in the records, and not to the mere fact that certain information may exist." Thus, the argument continues, the Department's "generic" notification that " 'there may be *Brady* material in the officer's personnel records,' " is not a disclosure of "information obtained from" the records (§ 832.7(a)).

We disagree. Based on the Department's explanation of how the *Brady* list at issue in this case was assembled (see *ante*, pt. I.A), the Department's disclosure that there "may" be *Brady* material in an officer's personnel records is, in effect, a disclosure that the officer *has* been found to have committed misconduct. This is not a "generic" disclosure merely because the misconduct could have been one of several kinds of misconduct, nor because evidence of the misconduct might not be "material" within the meaning of *Brady* in a particular case. (Cf. *Copley Press*, *supra,* 39 Cal.4th at p. 1297 [section 832.7(a) "is designed to protect, among other things, 'the identity of officers' subject to complaints"].)

Moreover, information is no less "obtained from" confidential records merely because it is abstracted before it is disclosed. As relevant here, Penal Code Section 832.7, subdivision (d) instructs that, "notwithstanding" the confidentiality created by subdivision (a), "a department or agency that employs peace or custodial officers may disseminate data regarding the number, type, or disposition of complaints

(sustained, not sustained, exonerated, or unfounded) made against its officers if that information is in a form which does not identify the individuals involved." (*Id.*, § 832.7, subd. (d).) This exception would be unnecessary if providing information *about* confidential records categorically fell outside of the "information obtained from" provision. (§ 832.7(a).)

In light of Senate Bill 1421, however, some of the records reviewed by the Department may not be confidential. (See, e.g., Pen. Code, § 832.7, subd. (b)(1)(C).) If the records are not confidential, then information "obtained from" those records is also not confidential. The record on appeal in this case was not developed with Senate Bill 1421 in mind. Given the many grounds that may have given rise to a deputy's inclusion on the *Brady* list, we cannot say that the list was derived entirely from records rendered nonconfidential by Senate Bill 1421.[4]

Nor can we say that a *Brady* list that includes both confidential and nonconfidential information melds into a single, nonconfidential whole. It is true that when a *Brady* list includes both confidential information and nonconfidential information, an officer's presence on the list does not necessarily communicate confidential information about that officer. In such a situation, one cannot infer from the officer's presence on the list that there is impeachment information in the officer's confidential records. (Cf. *Long Beach*, *supra*, 59 Cal.4th at p. 73 ["disclosing the names of officers involved in various shootings" was permissible, as it "would not imply that those shootings

---

[4] We express no view concerning whether Senate Bill 1421 affects the confidentiality of records that existed before the legislation's effective date.

resulted in disciplinary action against the officers, and it would not link those names to any confidential personnel matters or other protected information"]; *Commission on POST, supra,* 42 Cal.4th at p. 299 [names and employment dates of officers not confidential, in part because that information "does not involve the identification of an individual as the officer involved in an incident that was the subject of a complaint or disciplinary investigation"].) But this argument reflects too narrow a view of the confidentiality afforded by the *Pitchess* statutes. When a *Brady* list is created based on review of confidential records, information is still unambiguously "obtained from" those records. (§ 832.7(a).) It would be odd indeed to conclude that the Legislature intended to sacrifice the confidentiality of one officer's records merely because the officer was listed alongside others whose records were not confidential.

Further, because this argument focuses on whether someone can infer information about confidential records from the fact that an officer is on the *Brady* list, it appears to require one of two dubious approaches. It could be that disclosure of the fact that an officer is on the *Brady* list is permissible so long as the list is not based entirely on confidential information. That, after all, would be enough to sever the inference that if an officer is on the list, there must be evidence of discipline in the officer's confidential file. But if that is correct, then a *Brady* list may be created based on almost entirely confidential information, plus one officer whose misconduct is not confidential. We doubt the Legislature intended that result. Alternatively, it might be necessary to determine whether there is a sufficient mix of confidential and nonconfidential information such that it is genuinely unclear on what basis an officer was included on the

*Brady* list.  But that line seems challenging to administer —
and, again, unmoored from the statutory text, which concerns
"information obtained from" confidential records.

Because we cannot say that the *Brady* list at issue in this
case is entirely nonconfidential, and because partial
nonconfidentiality would not strip the remainder of the list of its
confidential status, we next consider whether the Department
may disclose confidential information on its *Brady* list to
prosecutors.

## B. The Department May Share Even Confidential Portions of Its *Brady* List with Prosecutors

Our conclusion that portions of the Department's *Brady*
list may be confidential raises the further question whether
sharing alerts based on such information with prosecutors
would be a violation of confidentiality.  We conclude that the
confidentiality created by the *Pitchess* statutes does not forbid
the limited disclosure to prosecutors at issue in this case.

### 1. Section 832.7(a) permits the Department to share Brady *alerts with prosecutors*

As noted, section 832.7(a) instructs that certain
information is "confidential and shall not be disclosed in any
criminal or civil proceeding except by discovery pursuant to
Sections 1043 and 1046 of the Evidence Code."  We made clear
in *Copley Press* that it is the condition of confidentiality that
restricts information sharing, not the "shall not be disclosed"
provision.  (See *Copley Press*, *supra*, 39 Cal.4th at p. 1285; see
also *Johnson*, *supra*, 61 Cal.4th at pp. 713-714.)  Regardless, any
limitation on "disclos[ure]" raises essentially the same question
as deeming information "confidential" (§ 832.7(a)):  With whom,
if anyone, may the Department share confidential information?

The statutory text alone provides no clear answer to this question. "In common usage, confidentiality is not limited to complete anonymity or secrecy. A statement can be made 'in confidence' even if the speaker knows the communication will be shared with limited others, as long as the speaker expects that the information will not be published indiscriminately." (*Department of Justice v. Landano* (1993) 508 U.S. 165, 173; see also *Food Marketing Institute v. Argus Leader Media* (2019) 588 U.S. ___ [2019 WL 2570624] [part III.A].) So, for example, it is hard to imagine that the term "confidential" would categorically forbid one employee of a custodian of records, tasked with maintaining personnel files, from sharing those records with another employee assigned to the same task. Put differently, deeming information "confidential" creates insiders (with whom information may be shared) and outsiders (with whom sharing information might be an impermissible disclosure). The text of the *Pitchess* statutes does not clearly indicate that prosecutors are outsiders, forbidden from receiving confidential *Brady* alerts.[5]

---

[5] If anything, the recent amendment to section 832.7(a) tends to indicate that the condition of confidentiality is meant to shield information from the public's eyes — not from the eyes of government officials who may need that information to satisfy a constitutional obligation. (See Pen. Code, § 832.7, subd. (b)(1) [certain records "shall not be confidential and shall be made available for public inspection pursuant to the California Public Records Act"]; cf. *Copley Press, supra,* 39 Cal.4th at p. 1285 [Pen. Code, § 832.7, subds. (c)-(d), "specify circumstances under which information may be released to the general public and the scope of information that may be released"].)

Viewing the *Pitchess* statutes "against the larger background of the prosecution's [*Brady*] obligation" (*Mooc, supra*, 26 Cal.4th at p. 1225), we instead conclude that the Department may provide prosecutors with the *Brady* alerts at issue here without violating confidentiality.

There can be no serious doubt that confidential personnel records may contain *Brady* material. An officer may provide important testimony in a criminal prosecution. Confidential personnel records may cast doubt on that officer's veracity. Such records can constitute material impeachment evidence. (See, e.g., *Giglio, supra*, 407 U.S. at pp. 154-155.) These are not close questions.

Because confidential records may contain *Brady* material, construing the *Pitchess* statutes to permit *Brady* alerts best "harmonize[s]" *Brady* and *Pitchess*. (*Deputy Sheriffs, supra*, 13 Cal.App.5th at p. 450 (conc. & dis. opn. of Grimes, J.).) *Brady* imposes on prosecutors "a duty to learn of any favorable evidence known to the others acting on the government's behalf in [a] case, including the police." (*Kyles, supra*, 514 U.S. at p. 437.) Prosecutors are deemed constructively aware of *Brady* material known to anyone on the prosecution team and must share that information with the defense. (See *In re Brown* (1998) 17 Cal.4th 873, 879.) In this context, construing the *Pitchess* statutes to cut off the flow of information from law enforcement personnel to prosecutors would be anathema to *Brady* compliance.

Indeed, to interpret "confidential" as forbidding the sharing of information with prosecutors would do more than forbid the formal *Brady*-list-and-alert practice at issue here. Even without formal procedures, conscientious prosecutors have

conferred with law enforcement agencies to identify confidential files that may contain impeachment material. (See, e.g., *Johnson, supra,* 61 Cal.4th at p. 707 [agency created *Brady* list in the face of " 'unnecessary paperwork and personnel costs' " caused by " '[r]epetitive requests by the District Attorney that the [Police] Department check employee personnel files of Department employees who may be witnesses"].) If "confidential" prevents formal procedures for sharing information with prosecutors, it prevents informal tips as well.

Of course, no one suggests that the *Pitchess* statutes completely prevent prosecutors from accessing confidential personnel records. Section 832.7(a) includes an exception for "investigations . . . concerning the conduct of peace officers or custodial officers . . . conducted by . . . a district attorney's office, or the Attorney General's office." And prosecutors may file *Pitchess* motions as appropriate. But the "investigations" exception (§ 832.7(a)) does not apply merely because "[a] police officer" is "a witness in a criminal case" (*Johnson, supra,* 61 Cal.4th at p. 714). And although the showing required for a *Pitchess* motion to trigger in camera review "is not high" (*Johnson,* at p. 720), neither is it imaginary. Without *Brady* alerts, prosecutors may be unaware that a *Pitchess* motion should be filed — and such a motion, if filed, may not succeed. Thus, interpreting the *Pitchess* statutes to prohibit *Brady* alerts would pose a substantial threat to *Brady* compliance.

It would also put deputies in a precarious position. The Fourteenth Amendment underlying *Brady* imposes obligations on states and their agents — not just, derivatively, on prosecutors. Law enforcement personnel are required to share *Brady* material with the prosecution. (See, e.g., *Carrillo v.*

*County of Los Angeles* (9th Cir. 2015) 798 F.3d 1210, 1219-1223 & fn. 12.)  The harder it is for prosecutors to access that material, the greater the need for deputies to volunteer it.

The Association's contrary view that "*Brady* relates only to the prosecutor" and that "*Brady* . . . does not impose obligations on law enforcement" is distressing and wrong.  The prosecution may bear ultimate responsibility for ensuring that necessary disclosures are made to the defense (see *In re Brown, supra,* 17 Cal.4th at p. 881), but that does not mean law enforcement personnel have no role to play.  This is not to imply that *Brady* alerts are a constitutionally required means of ensuring *Brady* compliance; only that disclosure of *Brady* material is required, and that *Brady* alerts help to ensure satisfaction of that requirement.

The Association further disputes that confidential personnel records may contain *Brady* material.  It argues that "when a law enforcement agency maintains information about a peace officer in [the officer's] personnel file, it is acting in an administrative, not an investigative, capacity, and such information is not within the purview of the prosecutor's duty under *Brady*."

This argument rests on a logical error.  To be sure, although the federal Constitution imposes a duty on states to afford defendants a fair trial, a prosecutor is not responsible for disclosing all information known to any part of a state.  Instead, if an "agency . . . has no connection to the investigation or prosecution of the criminal charge against the defendant," the agency is not part of "the prosecution team," and "the prosecutor does not have the duty to search for or to disclose" "information possessed by [that] agency."  (*In re Steele* (2004) 32 Cal.4th 682,

27

697.)  But it does not follow that information in an officer's confidential personnel file categorically falls outside the *Brady* duty to disclose.  Even if one assumes that a law enforcement agency is not a member of the prosecution team when acting in its capacity as a custodian of records — a proposition *Steele* does not establish — it may be that others, who clearly are on the prosecution team, are aware of the existence and content of those records.  A prosecutor, for example, may know from a prior *Pitchess* motion that a confidential file contains *Brady* information regarding an officer involved in a pending prosecution.  Moreover, the correspondence sent to deputies in this case served to "remind" them about information in their records, reflecting the fact that an officer will often (if not always) be aware of the contents of the officer's own confidential file.  Thus, even assuming that custodians are not necessarily part of the prosecution team, it does not follow that confidential personnel records are categorically unknown to the members of that team.[6]

The Association also suggests that confidential records fall outside the *Brady* duty to disclose because that duty extends only "to information *obtained during* an investigation about a criminal matter against a defendant." (Italics added.)  This, too, is mistaken.  What matters for *Brady* purposes is what the prosecution team knows, not how the prosecution team knows it.  Suppose, for example, that a prosecutor is personally aware (based on an earlier case) that a key witness in a pending

---

[6]    We need not hold that all information known to officers is necessarily within the scope of the *Brady* duty.  For now, it is enough to say that records connected to officers' discipline cannot be categorically excluded from that duty.

prosecution is a habitual liar who has been repeatedly convicted of perjury. To say that the prosecutor need not disclose that information merely because it was not "obtained during" investigation of the defendant's case would be irreconcilable with the right to a fair trial underlying *Brady*; it would "cast[] the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice." (*Brady*, *supra*, 373 U.S. at p. 88; cf. *City of San Jose*, *supra*, 5 Cal.4th at p. 57 [noting People's concession that *Brady* required disclosure, to defendants charged with battery on police officers, of the fact that an officer had been disciplined pursuant to a complaint of excessive force].)

To be clear, we do not suggest that permitting *Brady* alerts completely resolves the tension between *Brady* and the *Pitchess* statutes. Not all departments maintain *Brady* lists. And nothing guarantees that a *Brady* list will reflect all information that might prove "material" in each particular case. (*Brady*, *supra*, 373 U.S. at p. 87; see *ante*, pt. I.A.) But when a department seeks to transmit a *Brady* alert to prosecutors, allowing the department to do so mitigates the risk of a constitutional violation. With *Brady* in mind (see *Mooc*, *supra*, 26 Cal.4th at p. 1225), the term "confidential" (§ 832.7(a)) must be understood to permit such alerts.[7]

---

[7] To permit *Brady* alerts is not to require that *Pitchess* motions be supported by such alerts; there may be good cause for in camera inspection even if officers have been omitted from a *Brady* list maintained by their department.

### 2. Johnson *does not require a contrary conclusion*

The Court of Appeal relied on our decision in *Johnson* to reach a contrary conclusion. We decline to extend that decision to this context.

In *Johnson*, we rejected the view that prosecutors "may always review the confidential personnel records of police officers who are witnesses in a criminal case to determine whether the records contain *Brady* material." (*Johnson, supra*, 61 Cal.4th at p. 712.) Most notably, we reasoned: "[Section 832.7(a)] states that police officer personnel records are 'confidential.' It permits disclosure by use of the *Pitchess* procedures but otherwise provides only one exception to the confidentiality requirement — the exception for investigations. This exception indicates that the Legislature considered the range of situations in which prosecutorial need justifies direct access to peace officer personnel records, and it decided that those situations should be limited to 'investigations or proceedings concerning the conduct of peace officers or custodial officers' [citation], and does not extend to this context." (*Johnson*, at pp. 713-714.)

We acknowledge the argument that this analysis applies to *Brady* alerts. *Brady* alerts communicate information obtained from confidential records. That information, like the underlying records, is "confidential." (§ 832.7(a).) And nothing in section 832.7(a) — including the investigations exception — explicitly declares that different kinds of confidential information should be treated differently. (See also *Johnson, supra*, 61 Cal.4th at p. 714 ["prosecutors, as well as defendants, must comply with the *Pitchess* procedures if they seek information from confidential personnel records"].)

That said, there is no question that our decision in *Johnson* was based on an understanding that *Brady* alerts were permissible. We viewed *Brady* alerts as so "laudabl[e]" (*Johnson, supra,* 61 Cal.4th at p. 721) that we attached to our opinion the order "establish[ing] department procedures for *Brady* disclosure of materials in employee personnel files" (*id.,* at pp. 706-707). Moreover, when construing section 832.7(a), we reasoned that "permitting prosecutors routine access to personnel records is not necessary to protect defendants' due process rights to obtain potentially exculpatory evidence," relying on our later discussion of *Brady* alerts. (*Johnson,* at p. 714; see also *ibid.* ["as discussed *post*"].) To now hold that *Johnson*'s interpretation of "confidential" forbids *Brady* alerts would be to read our opinion as announcing an interpretation that both: (i) depends on the legality of *Brady* alerts; and yet (ii) implies that such alerts are unlawful. Precedent cannot compel a result if it points toward a self-defeating conclusion.

Nor is the relationship between the term "confidential" and the investigations exception beyond debate. (*Johnson, supra,* 61 Cal.4th at p. 714.) *Johnson* inferred that because there is an exception to confidentiality for investigations, the *Pitchess* statutes otherwise limit investigators' (specifically, prosecutors') access to "confidential" information. (See *id.,* at pp. 713-714.) But an exception aimed at *investigations* need not imply anything about whether *investigators* can view confidential material; for example, the exception could concern prosecutors' ability to share information with others when an investigation is ongoing. Moreover, even if the investigations exception does imply that prosecutors lack unlimited access to confidential records during ordinary criminal cases, the

exception could be understood to set a floor on prosecutorial access, rather than, as in *Johnson*, a ceiling.  We need not embrace either of these interpretations to conclude that *Johnson*'s approach is not compelled by the statutory text — and should not be reflexively extended without considering "defendants' due process rights."  (*Johnson*, at p. 714.)

In any event, even if the investigations exception is the only basis on which prosecutors may directly access underlying confidential records without a *Pitchess* motion, it does not follow that the Department is forbidden to transmit the *Brady* alerts at issue in this case.  The *Pitchess* statutes reflect a balance between "a litigant's discovery interest" and "an officer's confidentiality interest."  (*Stiglitz, supra*, 60 Cal.4th at p. 639.)  Although the statutes may shield the fact that an officer has been disciplined from disclosure to the public at large, the mere fact of discipline, disclosed merely to prosecutors, raises less significant privacy concerns than the underlying records at issue in *Johnson*.

For these reasons, we decline to extend *Johnson*'s conclusion regarding "direct access to peace officer personnel records" to forbid the *Brady* alerts at issue here.  (*Johnson, supra*, 61 Cal.4th at p. 713.)  The Department may share this limited information, for the limited purpose of ensuring *Brady* compliance, with the limited class of persons (i.e., prosecutors) with a particularized need to know.  (See *ante*, pt. III.A.)

## IV.  CONCLUSION AND DISPOSITION

The question presented in this case concerns whether the Department may share confidential *Brady* alerts with prosecutors.  We do not address whether it would violate confidentiality for a prosecutor to share an alert with the

defense. (See *Johnson*, *supra*, 61 Cal.4th at p. 722.) And because this case concerns only *Brady* alerts, it provides no occasion to revisit whether prosecutors may directly access underlying records, or perhaps a subset of those records. (See Pen. Code, § 832.8, subd. (a)(4) ["discipline"], (5).) To resolve the question presented, it is enough to hold that the Department does not violate section 832.7(a) by sharing with prosecutors the fact that an officer, who is a potential witness in a pending criminal prosecution, may have relevant exonerating or impeaching material in that officer's confidential personnel file.

We reverse the judgment of the Court of Appeal and remand the matter for further proceedings consistent with this opinion.

**CANTIL-SAKAUYE, C. J.**

**We Concur:**

**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**GROBAN, J.**

*See last page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Association for Los Angeles Deputy Sheriffs v. Superior Court

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 13 Cal.App.5th 413
**Rehearing Granted**


_____

**Opinion No.** S243855
**Date Filed:** August 26, 2019

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** James C. Chalfant


_____

**Counsel:**

Benedon & Serlin, Douglas G. Benedon, Judith E. Posner; Green & Shinee, Richard A. Shinee; The Gibbons Firm, Elizabeth J. Gibbons and Emily B. Suhr for Petitioner.

Stone Busailah, Michael P. Stone, Muna Busailah and Robert Rabe for Riverside Sheriffs' Association, Los Angeles Police Protective League, Southern California Alliance of Law Enforcement and Los Angeles School Police Association as Amici Curiae on behalf of Petitioner.

Mastagni Holstedt, David P. Mastagni, David E. Mastagni, Isaac S. Stevens; Berry Wilkinson Law Group and Alison Berry Wilkinson for Peace Officers Research Associaiton and the PORAC Legal Defense Fund as Amici Curiae on behalf of Petitioner.

Frederick Bennett for Respondent.

Liebert Cassidy Whitmore, Geoffrey S. Sheldon, Alex Y. Wong and James E. Oldendorph, Jr., for Real Parties in Interest.

Bartkiewicz, Kronick & Shanahan and Jennifer T. Buckman for League of California Cities as Amicus Curiae on behalf of Real Parties in Interest.

Mark Zahner; Michael D. Schwartz, Chief Assistant District Attorney (Ventura); Jerry P. Coleman, Special Assistant District Attorney (San Francisco); and Albert C. Locher, Retired Assistant District Attorney (Sacramento) for California District Attorneys Association as Amicus Curiae on behalf of Real Parties in Interest.

Peter J. Eliasberg, Melanie R.P. Ochoa; Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, Benjamin N. Gluck, Naeun Rim and Nithin Kumar for ACLU of Southern California, ACLU of Northern California, ACLU of San Diego and Imperial Counties and Dignity and Power Now as Amici Curiae on behalf of Real Parties in Interest.

**Page 2 – S243855 – counsel continued**

**Counsel:**

Hilary Potashner, Federal Public Defender, and Alyssa D. Bell, Deputy Federal Public Defender, for the Office of the Federal Defender of Los Angeles as Amicus Curiae on behalf of Real Parties in Interest.

Steven Harmon, Public Defender (Riverside) and Laura Arnold, Deputy Public Defender**,** for California Public Defenders Association and Law Offices of the Public Defender for the County of Riverside as Amici Curiae on behalf of Real Parties in Interest.

Jonathan Abel for Professor Jody D. Armour, Professor W. David Ball, Professor Lara Bazelon, Professor Samantha Buckingham, Dean Erwin Chemerinsky, Professor Gabriel "Jack" Chin, Professor Beth A. Colgan, Professor Sharon Dolovich, Professor Ingrid Eagly, Associate Dean Carrie Hemple, Professor Alex Kreit, Professor Máximo Langer, Professor Laurie Levenson, Associate Dean Justin Levitt, Professor Eric J. Miller, Professor Samuel Pillsbury, Dean L. Song Richardson, Professor Heidi Rummel, Professor Jonathan Simon, Professor Kelly Strader, Professor Katie Tinto, Professor Sherod Thaxton, Professor Ronald Tyler, Professor Rachel E. VanLandingham, Professor Robert Weisberg and Professor Kate Weisburd as Amici Curiae on behalf of Real Parties in Interest.

Alicia Virani and Stephen K. Dunkle for California Attorneys for Criminal Justice as Amicus Curiae on behalf of Real Parties in Interest.

George Gascón, District Attorney (San Francisco) and Allison G. Macbeth, Assistant District Attorney, for San Francisco District Attorney as Amicus Curiae on behalf of Real Parties in Interest.

Xavier Becerra, Attorney General, Edward C. DuMont, State Solicitor General, Aimee Feinberg, Deputy State Solicitor General, Peter D. Halloran and J. Michael Chamberlain, Deputy Attorneys General, for Attorney General as Amicus Curiae on behalf of Real Parties in Interest.

Dennis J. Herrera, City Attorney (San Francisco) and Jeremy M. Goldman, Co-Chief of Appellate Litigation for City and County of San Francisco, by and through the San Francisco Police Department as Amici Curiae on behalf of Real Parties in Interest.

Jeff Adachi, Public Defender (San Francisco), Matt Gonzalez, Chief Attorney, and Dorothy Bishoff, Deputy Public Defender, for San Francisco Public Defender's Office as Amicus Curiae on behalf of Real Parties in Interest.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Judith E. Posner
Benedon & Serlin
22708 Mariano Street
Woodland Hills, CA  91367-6128
(818) 340-1950

Geoffrey S. Sheldon
Liebert Cassidy Whitmore
6033 West Century Boulevard, 5th Floor
Los Angeles, CA  90045
(310) 981-2000

Aimee Feinberg
Deputy State Solicitor General
1300 I Street, Suite 125
Sacramento, CA  94244-2550
(916) 210-6003